In the

# United States Court of Appeals

## For the Seventh Circuit

No. 02-3440

In the matter of:

FRED E. SCHOONOVER,

*Debtor-Appellant.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 02-CV-4069-JPG—**J. Phil Gilbert**, *Judge.*

ARGUED MAY 19, 2003—DECIDED JUNE 9, 2003

Before EASTERBROOK, ROVNER, and EVANS, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Edward Karr obtained a $100,000 judgment in Illinois court against Fred Schoonover. When Schoonover did not pay, Karr invoked the judgment to garnish about $80,000 that Schoonover had in the Bank of Herrin. Schoonover then filed a bankruptcy petition and listed the $80,000 as exempt, on the ground that the money had come from Social Security, veterans, and disability payments. He relied on 735 ILCS 5/12-1001(g) and 12-1006, state exemption statutes that a debtor may elect to use. See 11 U.S.C. §522(b)(2)(A). Karr ignored the proceeding until Schoonover filed a motion to avoid the judicial lien. See 11 U.S.C. §522(f). Karr then objected to the claim of exemption. After an evidentiary hearing, at which Schoonover testified that most of the

money had come from the sale of antiques and not from the deposit of benefit checks, Bankruptcy Judge Meyers concluded that the funds are not exempt under state law, even if some of the money had a source in governmental benefits (as Schoonover's wife testified). The district judge affirmed. 285 B.R. 695 (S.D. Ill. 2002).

Schoonover's testimony that the money came from antiques raises the question whether his claim of exemption should be classified as bankruptcy fraud. Assuredly he is not entitled to shield these funds from creditors. Section 12-1001(g) exempts "[t]he debtor's right to receive" public benefits; it has nothing to do with funds on deposit long after their receipt and commingling with the debtor's other assets. Like the anti-alienation clauses in the federal benefits statutes themselves, this law ensures that recipients enjoy the minimum monthly income provided by the benefits laws; it does not entitle recipients to shield hoards of cash. See *Fayette County Hospital v. Reavis*, 169 Ill. App. 3d 246, 250, 523 N.E.2d 693, 695 (5th Dist. 1988) ("the Illinois legislature did not intend to exempt property which is traceable to social security benefits . . ."). Section 12-1006 exempts an "interest in or right, whether vested or not, to the assets held in . . . a retirement plan . . . if the plan . . . is intended in good faith to qualify as a retirement plan under applicable provisions of the Internal Revenue Code . . . ." What is necessary is a trust or equivalent arrangement segregating the assets until retirement. That assets freely usable for current consumption may be traced to public benefits does not make them a tax-qualified "retirement plan" and thus does not support an exemption under §12-1006. See *In re Weinhoeft*, 275 F.3d 604 (7th Cir. 2001); *Auto Owners Insurance v. Berkshire*, 225 Ill. App. 3d 695, 588 N.E.2d 1230 (2d Dist. 1992).

In this court, Schoonover disdains the language of the statutes and disregards the opinions interpreting them. He contends instead that the bankruptcy court erred in re-

quiring him to shoulder the "burden of proof"—by which he means the burden of producing evidence about the funds' genesis. How this could affect the outcome is a mystery. If Schoonover had not presented his own testimony (and that of his spouse) about the provenance of the funds, Karr surely would have called them to the stand for that purpose. Nothing turns on the allocation between debtor and creditor of the risk of nonpersuasion: the dispute was resolved on wholly legal grounds, so the burden of persuasion is irrelevant.

Along the way, however, Schoonover made a legal argument: that Karr waited too long before contesting the claim of exemption. The creditors' meeting occurred on April 12, 2001, and from then creditors had 30 days to object to any claim of exemption. That time may be extended only if a creditor asks for more before the 30 days have run. See Fed. R. Bankr. P. 4003(b). Once the period expires, creditors are out of luck even if the claim of exemption is specious. See *Taylor v. Freeland & Kronz*, 503 U.S. 638 (1992). Karr let the 30 days pass without action. On August 24, 2001, Schoonover filed a motion under §522(f) asking the bankruptcy court to avoid Karr's lien. Karr filed a timely answer to this motion—but by then it was September, too late (Schoonover says) to deny that the accounts are exempt. And *if* they are exempt then the lien should be avoided. See *Owen v. Owen*, 500 U.S. 305 (1991).

After May 12, 2001, no unsecured creditor could have asserted any right to payment from the funds on deposit at the Bank of Herrin. But Karr had a judicial lien, and though this may not have given him a security interest in the accounts it did give him a valuable entitlement: to wait out the bankruptcy and enforce the lien at its conclusion, unless the debtor asked the bankruptcy court for relief. "[A] creditor's right to foreclose on [a lien] survives or passes through the bankruptcy." *Johnson v. Home*

*State Bank*, 501 U.S. 78, 83 (1991). Although general unsecured creditors must take the initiative by objecting, lienholders may wait for notice under §522(f). Once they receive notice, lienholders litigate on the schedule appropriate to a proceeding under §522(f), not the schedule for general creditors.

*Taylor* did not get its 30-day limit from the Bankruptcy Code: all §522(*l*) says is that creditors who want dibs on assets claimed as exempt must object, which Karr eventually did. The deadline came from Rule 4003(b), which deals with objections by general creditors. Motions under §522(f) to avoid liens fall under Rule 4003(d), not Rule 4003(b)—and Rule 4003(d) does *not* set a 30-day schedule but instead provides that "[a] proceeding by the debtor to avoid a lien or other transfer of property exempt under §522(f) of the Code shall be by motion in accordance with Rule 9014." In turn, Rule 9014 leaves deadline-setting to the bankruptcy judge. The upshot is that lienholders have more time than general unsecured creditors, a dispensation essential if lienholders are to enjoy any chance to watch the proceedings from afar and enforce their liens later. Just as §522(*l*) and Rule 4003(b) put the onus of timely objection on general unsecured creditors, so §522(f) and Rules 4003(d) and 9014 put the onus of contesting a lien on debtors; the clock for lienholders runs from the motion under §522(f) and not from the meeting of unsecured creditors. To the extent that *In re Chinosorn*, 248 B.R. 324, 327-28 (N.D. Ill. 2000), reaches a different conclusion, it is disapproved. (As far as we can tell, this is the first appellate consideration of the question whether Rule 4003(b) and *Taylor* affect the time available to lienholders.) Karr's objection was timely.

AFFIRMED

No. 02-3440 5

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*