**In re Donna J. TANZI and John D. Tanzi, Debtors.**

**Donna J. Tanzi and John D. Tanzi, Appellants,**

**v.**

**Comerica Bank–California, Appellee.**

**BAP No. WW–03–1003–RyMaC. Bankruptcy Nos. 02–43072– PBS, 02–43115–PBS.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on July 25, 2003.

Filed Aug. 11, 2003.

Jerome Shulkin, Shulkin Hutton, Inc., P.S., Seattle, WA, for Donna J. Tanzi and John D. Tanzi.

Hilary Barnes, Stoel Rives, Seattle, WA, for Comerica Bank–California.

Before RYAN, MARLAR, and CARROLL,[1] Bankruptcy Judges.

## OPINION

RYAN, Bankruptcy Judge.

Shortly before creditor Comerica Bank–California (the "Bank") filed involuntary

---

**1.** Honorable Peter H. Carroll, Bankruptcy Judge for the Central District of California, sitting by designation.

chapter 7[2] bankruptcy petitions against Donna and John Tanzi ("Debtors"), Debtors moved to Florida. Less than two weeks later, Debtors purchased a home in Naples, Florida (the "Residence"). Thereafter, the court entered an order for relief. After Debtors claimed the entire value of the Residence exempt under Florida law, the Bank objected (the "Objection") under § 522(b)(2)(A) on the ground that the Residence was not Debtors' domicile for the longer portion of the 180 days immediately preceding the petition dates. The court sustained the Objection, and Debtors timely appealed.

We AFFIRM.

## I. FACTS[3]

Debtors were the primary shareholders and officers of Transition Technology International ("TTI"). In 1997, the Bank provided a $8,500,000 line of credit to TTI, and Debtors personally guaranteed the loan. Thereafter, TTI defaulted on the loan and the Bank looked to Debtors for repayment. The Bank demanded payment in March 2002 after a third and final forbearance agreement between Debtors and the Bank.

Debtors had residences both in California and Washington. In March 2002, Debtors sold their California residence. On March 19, 2002, Debtors moved from Washington to Naples, Florida.[4] On March 27 and March 28, 2002, the Bank filed the involuntary petitions against Debtors.[5] On April 7, 2002, Debtors purchased the Residence. The court entered an order for relief in the consolidated cases on June 14, 2002.

Debtors concede that they resided in Florida no more than eight days before the petition dates. However, they assert that the 180-day period prescribed in § 522(b)(2)(A)[6] runs from the relief date, not the petition date. Debtors contend that courts should apply § 522(b)(2)(A) differently in involuntary bankruptcy cases by fixing debtors' rights from the relief date rather than the petition date. They assert that this result appropriately allows involuntary debtors the same opportunity as voluntary debtors to maximize their rights to exemptions by converting nonexempt property to exempt property. According to Debtors, involuntary and voluntary debtors should be allowed the same

---

**2.** Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

**3.** The parties do not dispute the underlying facts recited in the court's memorandum decision entered on December 19, 2002.

**4.** It is unclear as to how long Debtors were actually in Washington prior to moving to Florida. In her Rule 2004 examination, Donna Tanzi admitted that her primary residence was in Washington prior to March 19, 2002, the day she moved to Florida. However, Debtors indicate on appeal (and in one of their filed pleadings before the bankruptcy court) that they were living in California until they arrived in Washington on February 20, 2002. The bankruptcy court was aware of

the conflicting dates, but declined to address the issue.

**5.** On September 25, 2002, the court consolidated Debtors' cases for joint administration.

**6.** Section 522(b) provides in relevant part:

Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate ... any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180-day period than in any other place ....

11 U.S.C. § 522(b)(2)(A).

flexibility in pre-planning their bankruptcy cases and marshaling their exempt property.

The Bank responds that the plain meaning of § 522 requires that the 180–day period begins to run from the petition date as it specifically refers to the "date of the filing of the petition." 11 U.S.C. § 522(b)(2)(A). The Bank does not argue that Debtors are not entitled to an exemption on the Residence. Rather it asserts that, under § 522(b)(2)(A), Florida exemptions do not apply. Thus, the question is whether Florida's homestead exemption applies.

## II. ISSUE

Whether the bankruptcy court erred by applying the petition date rather than the relief date in sustaining the Objection.

## III. STANDARD OF REVIEW

█ The determination of whether § 522(b)(2)(A) runs from the petition date or the relief date is a question of law. Therefore, we review the bankruptcy court's ruling de novo. *Churchill v. F/V Fjord (In re McLinn)*, 739 F.2d 1395, 1398 (9th Cir.1984).

## IV. DISCUSSION

*The Court Did Not Err By Applying the Petition Date to Sustain the Objection.*

█ Statutory construction of the Bankruptcy Code is a "holistic endeavor" requiring consideration of the entire statutory scheme. *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). The plain language of a statute is conclusive as to its meaning when the statutory scheme is coherent and consistent. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 240–41, 109

S.Ct. 1026, 103 L.Ed.2d 290 (1989). If a provision is susceptible of more than one interpretation, the construction adopted should advance the overall statutory policy. *Rake v. Wade*, 508 U.S. 464, 471, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993) (stating that one provision in a statute should not be construed so as to suspend or supercede another provision); *Timbers of Inwood Forest Assocs.*, 484 U.S. at 371, 108 S.Ct. 626 (statutory term "that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme," for example, when "only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law"). Where the statute's language is plain, "the sole function of the court is to enforce it according to its terms." *Ron Pair Enters.*, 489 U.S. at 241, 109 S.Ct. 1026 (citation omitted); *see Rake*, 508 U.S. at 471, 113 S.Ct. 2187. Any judicial inquiry into the purpose, background or legislative history of the statute is foreclosed unless a literal application of the statute produces "a result demonstrably at odds with the intent of its drafters." *Ron Pair Enters.*, 489 U.S at 242, 109 S.Ct. 1026 (citation omitted). *Accord Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) (stating that "courts must presume that a legislature says in a statute what it means and means in a statute what it says there").

█ The plain meaning of § 522 dictates that the petition date control the 180–day analysis in determining which exemption law applies here. Section 522(b)(2)(A) directs the court to employ the state law applicable "**on the date of the filing of the petition** at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180–day period

than in any other place ...." 11 U.S.C. § 522(b)(2)(A) (emphasis added). Thus, the provision specifically refers to the petition date and does not distinguish between voluntary and involuntary petitions. Likewise, the Code's definition of "petition" does not differentiate between involuntary and voluntary filings, simply providing that " 'petition' means petition filed under section 301, 302, 303, or 304 of this title, as the case may be, commencing a case under this title ...." 11 U.S.C. § 101(42).

■ Courts are obligated to enforce the literal meaning of a statute when the language of the statute itself is fairly susceptible of only one construction. *See Ron Pair Enters.*, 489 U.S. at 241, 109 S.Ct. 1026. The meaning of "the date of the filing of the petition" is clear and unambiguous and does not distinguish between voluntary and involuntary debtors. *See In re Peacock*, 119 B.R. 605, 608 (Bankr.N.D.Ill. 1990); *In re Butcher*, 75 B.R. 441, 442 (E.D.Tenn.1987); *Swink v. Sunwest Bank (In re Fingado)*, 113 B.R. 37, 43 (Bankr. D.N.M.1990). The court correctly applied the provision as written.

■ Although § 522(b)(2)(A) creates a time frame for determining a debtor's domicile for exemption law purposes, it does not limit a debtor's ability to engage in some prebankruptcy planning. Debtors may acquire exempt property immediately prior to filing bankruptcy in order to maximize their assets. In the Ninth Circuit, prepetition conversion of non-exempt property to exempt property, without more, is not fraudulent. *See Gill v. Stern (In re Stern)*, 317 F.3d 1111, 1116 (9th Cir.2003). In the context of involuntary cases, courts have held that debtors can convert nonexempt property to exempt property during the gap period between the petition date and entry of the order for relief. *See e.g. In re Andreotti*, 16 B.R. 28 (Bankr. E.D.Cal.1981).

In *Andreotti*, the court considered "whether the 'line of cleavage' which establishes the exempt or nonexempt character of the assets should be drawn at the date that the involuntary petition was filed or whether it should be drawn at the date that relief was ordered or at some other time." *Id.* at 30. It determined that, under § 522, an involuntary debtor could exempt property acquired after the petition date but before entry of the order for relief. In reaching that conclusion, it noted that pursuant to § 303(f), until the entry of an order for relief, an involuntary debtor can "continue to use, acquire, or dispose of property as if an involuntary case concerning the debtor had not been commenced." *Id.* at 31 (quoting 11 U.S.C. § 303(f)). Moreover, the court noted that it would be inequitable to allow a voluntary debtor the ability to maximize assets through prepetition bankruptcy planning while denying the same opportunity to involuntary debtors. *Id.*

Debtors contend that pursuant to the reasoning behind the *Andreotti* decision, their rights to their exemptions should not be fixed until the relief date. However, Debtors fail to recognize that the issue at hand differs from that in *Andreotti*. The Objection raised the question whether Debtors can avail themselves of Florida's exemption law, not whether they can claim an exemption on the Residence. *Andreotti* addresses only the latter question, and its reasoning does not change the plain meaning of § 522(b)(2)(A). Moreover, Debtors failed to cite a case in which a court did not strictly apply the language of § 522(b)(2)(A) to an involuntary debtor. Rather, case law supports treating voluntary and involuntary debtors the same under § 522(b)(2)(A). *See Peacock*, 119 B.R. 605; *Butcher*, 75 B.R. 441; *Fingado*, 113 B.R. 37.

In *Peacock*, a creditor filed an involuntary petition against the debtor but failed to properly serve the debtor with the summons. *See Peacock*, 119 B.R. at 606. Over nine months later, the creditor obtained an alias summons and properly served the debtor. As a result, the court did not enter the order for relief until a year after the petition date. Prior to the relief date, applicable state exemption law changed and the debtor altered his schedules to incorporate certain exemptions that were not previously available. *Id.* at 607. A creditor and the trustee objected to the newly included exemption on the ground that, according to § 522(b)(2)(A), the debtor could only claim exemptions that were available on the petition date. The court agreed, applying the plain meaning of § 522(b)(2)(A). In its discussion, the *Peacock* court noted the distinction between the issue at hand and the issue in *Andreotti*:

> [w]hile Section 522(b)(2)(A) does provide that the debtor may exempt from property of the estate any property that is exempt under federal law or state law that is applicable on the date of the filing of the petition, this section can be read to fix the law controlling the exemptions[,] *not* to fix the property subject to these exemptions at the time of the filing of the petition.

*Id.* at 609 (quoting *Wilson v. Davis (In re Wilson)*, 62 B.R. 43, 45 (E.D.Tenn.1985)).

Contrary to Debtors' assertions, there is no reason to reach a different result from the *Peacock* court. Debtors contend that the rights of a debtor in an involuntary bankruptcy should be the same as the rights of a debtor in a voluntary bankruptcy. Therefore, debtors should be allowed to change their domicile as part of their bankruptcy planning. Debtors' argument is unpersuasive because it rests on the assumption that changing a domicile to obtain the most liberal state law exemptions is an absolute right enjoyed by voluntary debtors. This is not always the case. Some courts have held that a prepetition change in domicile to take advantage of more liberal exemptions is not allowed. *See, e.g., In re Coplan*, 156 B.R. 88 (Bankr. M.D.Fla.1993).

In *Coplan*, the court disallowed the generous Florida homestead exemption to debtors who had moved to Florida one year and five days prior to filing their bankruptcy petition. After considering the facts of the case, the court determined that the debtors moved to Florida as part of an overall scheme to maximize exempt property and shield assets from creditors. Therefore, the court did not allow the debtors to benefit from Florida's liberal exemption. *Id.* at 91.

The Ninth Circuit has not addressed the propriety of changing a domicile to obtain the benefit of a state's exemption laws. However, *Coplan* supports the view that debtors do not have an absolute right to change their domicile just to benefit from another state's exemption laws. Such manipulation, intended to preserve assets at the expense of one's creditors, may constitute inappropriate forum shopping. *See In re Lusiak*, 247 B.R. 699, 704 (Bankr. N.D.Ohio 2000) (establishing a domicile in a state solely to obtain a more favorable exemption in bankruptcy is forum shopping).

■ Here, the involuntary petitions were filed on March 27 and 28, 2002. Debtors concede that they did not relocate to Florida until March 19, 2002. Therefore, it is undisputed that Debtors were not domiciled in Florida for a longer portion of the 180–day period preceding the filing of the petition than any other place. *See* 11 U.S.C. § 522(b)(2)(A). Accordingly, the court properly applied the plain meaning of § 522(b)(2)(A), and it did not err

when it sustained the Objection. In addition, no persuasive policy reason justifies distinguishing between voluntary and involuntary debtors when applying § 522(b)(2)(A).[7]

Additionally, even if we adopt Debtors' theory and apply the relief date to determine Debtors' exemption rights, the evidence is ambiguous as to whether Debtors were domiciled in Florida for a longer portion of the 180–day period preceding the relief date. In their supplemental reply brief, Debtors contend that, during the 180–day period preceding the relief date, they were domiciled 88 days in Florida, 66 days in California,[8] and 27 days in Washington. As indicated above, there was conflicting evidence as to how long Debtors were domiciled in California and Washington. Donna Tanzi admitted in her Rule 2004 examination that her primary residence was in Washington during the six-month period before she moved to Florida. In light of the conflicting evidence, we cannot determine if Debtors were indeed domiciled in Florida for the longer portion of the 180–day period preceding the relief date. Remand is unnecessary because, as discussed above, the court properly applied the petition dates to sustain the Objection.

 Finally, we do not need to consider the Bank's request for attorney's fees in connection with defending this appeal. The Bank failed to comply with the procedure set forth in Rule 8020:

> If a district court or bankruptcy appellate panel determines that an appeal from an order, judgment, or decree of a bankruptcy judge is frivolous, it may, after a separately filed motion or notice from the district court or bankruptcy appellate panel and reasonable opportunity to respond, award just damages and single or double costs to the appellees.

FED. R. BANKR. P. 8020. Rule 8020 is strictly enforced. "A request for sanctions in an appellee's brief is procedurally improper ... as it does not provide the appellant sufficient notice and opportunity to respond to the request." *Marino v. Classic Auto Refinishing, Inc. (In re Marino)*, 234 B.R. 767, 770 (9th Cir. BAP 1999) (citation omitted). Therefore, the Bank's request for attorney's fees is denied.

## V. CONCLUSION

In sum, the bankruptcy court did not err when it used the petition date in applying § 522(b)(2)(A) to sustain the Objection.

We also deny the Bank's request for attorney's fees on appeal.

AFFIRMED.

---

**7.** Policy considerations play a significant role in statutory construction, particularly when the language of a statute is unclear. *See, e.g., Employers Ins. of Wausau v. Plaid Pantries, Inc.*, 10 F.3d 605, 607 (9th Cir.1993) (holding that both legislative history and public policy support the conclusion that workers' compensation insurance is an employee benefit plan under § 507(a)(4)); *Bonner Mall P'ship v. U.S. Bancorp Mortgage Co. (In re Bonner Mall P'ship)*, 2 F.3d 899, 915–17 (9th Cir.1993), (new value exception is consistent with underlying policies of chapter 11). However, the court's role is to interpret and apply statutes, not to rewrite them. The plain meaning of a facially clear and unambiguous statute must be enforced despite well-reasoned policy implications to the contrary. *See, e.g., Hessinger & Assocs. v. U.S. Trustee (In re Biggar)*, 110 F.3d 685, 688 (9th Cir.1997); *Bundles v. Baker (In re Bundles)*, 856 F.2d 815, 823 (7th Cir.1988).

**8.** Using the dates provided by Debtors, our calculation indicates that Debtors could only be in California for 65 days, not 66 days.