In re Casimir K. JARSKI, Debtor.

No. 2–03–03779–PHX–RJH.

United States Bankruptcy Court, D. Arizona.

Nov. 6, 2003.

Michael Reddig, Reddig Law Office, Flagstaff, AZ, for Debtor.

Adam B. Decker, Barry C. Dickerson, Udall Shumway & Lyons, PLC, Mesa, AZ, for Deborah Bernreuter.

## OPINION RE: DISCHARGEABILITY AND LIEN AVOIDANCE

RANDOLPH J. HAINES, Bankruptcy Judge.

The questions to be determined here are the validity of Debtor's claimed homestead exemption pursuant to Arizona Revised Statutes (hereinafter "A.R.S.") § 33–1101, and whether Respondent's judicial lien is unavoidable because it is of the sort contemplated by 11 U.S.C. § 522(f)(1)(A)(i).[1] The Court has taken under advisement Debtor's motions to avoid liens and treats them as a motion for summary judgment. The Court also treats respondent's motion to determine dischargeability of the liens as a motion for summary judgment. The two issues are connected in this case such that the Court decides them together.

On the question of the Debtor's homestead exemption, this Court finds that sufficient evidence could be produced to show Arizona residency in order for Debtor to claim a valid homestead exemption in Arizona. The Court also finds, however, that the judicial lien is unavoidable because it is in the nature of child support.

### Facts

Debtor Casimir Jarski ("Jarski") filed for Chapter 7 and listed as exempt the equity in his residence at 1327 E. Sunburst Lane, Tempe, AZ ("Tempe property").[2] In a previous action to determine custody and visitation of Jarski's children in the Maricopa County Superior Court, Respondent Deborah Bernreuter ("Bernreuter") was awarded some attorney's fees and costs in the amount of $22,652 plus interest. Some time later, but prior to Jarski's chapter 7 filing, Bernreuter recorded this judgment and thereby obtained a judicial lien against Jarski's real property. Subsequent to an appeal of that decision to the Arizona Court of Appeals, and after Jarski's chapter 7 filing, Bernreuter was awarded additional attorneys fees and costs for the appeal in the amount of $2,650 plus interest, for which Bernreuter also recorded her judgment and received a judicial lien.

Jarski filed two separate motions to avoid these liens pursuant to 11 U.S.C. § 522(f), claiming impairment of "an exemption to which the debtor would have been entitled under" § 522(b), namely his Arizona homestead exemption on his Tempe property. Bernreuter filed objections to the motions and a complaint to determine dischargeability pursuant to 11 U.S.C. § 523(a)(5). The Court held a

---

1. Unless otherwise indicated, all code, section, and rule references are to the United States Bankruptcy Code, 11 U.S.C. §§ 101–1330, and the Federal Rules of Bankruptcy Procedure.

2. Arizona has opted out of the federal exemptions, A.R.S. 33–1133(B), and permits a homestead exemption of up to $100,000 for Arizona residents. A.R.S. § 33–1101.

hearing on Jarski's lien avoidance motion, after which it took the matter under advisement. A trial has been scheduled for the dischargeability matter.

### Exemption by Default § 522(*l*)

██ Jarski claims entitlement to an Arizona homestead. Bernreuter claims that Jarski is a California resident, and proffers a Registration of Out–of–State Custody Decree in which Jarski states he has lived in California since January 3, 2003, in support of this position. Jarski's initial response to this argument is that it is untimely, because Bernreuter failed to make a timely objection to his Arizona homestead claim.

Rule 4003(b) and § 522(*l*) give creditors 30 days from the meeting of creditors to object to a § 522(b) exemption claim. The Supreme Court has held that if no objection is timely filed the exemption is valid even if there is no statutory or reasonably disputable basis for claiming it. *Taylor v. Freeland & Kronz*, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992).

The Ninth Circuit BAP has held that judicial lien creditors can defend against lien avoidance on the ground the property was not exempt despite having failed to object to the debtor's exemption claim within the 30 day time period. *Morgan v. FDIC (In re Morgan)*, 149 B.R. 147 (9th Cir. BAP 1993). The Ninth Circuit BAP relied primarily on due process concerns. The notice of the first meeting of creditors does not give notice of what the debtor has claimed as exempt, and gives no indication to lienholders that their liens may possibly be avoided; the notice only gives notice of the time to object to any claimed exemptions. "[D]ue process should require that the lien creditor receive notice ... that the liened property is claimed as exempt before the time to object has expired." *Id.* at 152.

Recently the Seventh Circuit also reached the same result on different grounds. *In re Schoonover*, 331 F.3d 575 (7th Cir.2003). In *Schoonover*, the court held that the 30–day limit applies only to unsecured creditors, and that lienholders could wait until after they received notice of a motion to avoid liens before filing an objection. Because "the clock for lienholders runs from the motion under § 522(f) and not from the meeting of unsecured [*sic*] creditors," Bernreuter's objection would not be precluded on the Seventh Circuit analysis. *Id.* at 578.

*Morgan* and *Schoonover* reach the right result but neither analysis is entirely satisfactory, and there is a more sound statutory basis on which to reach their results. The "would have been" language of § 522(f) imposes a time element on the types of exemptions that can be used to avoid liens. Matthew Ellingson, *Getting Around Taylor: A New Look at Judicial Lienholders and Exemptions by Default*, Norton Bankr.L. Adviser, October 2003, at 7, 9. On this analysis, the debtor is only able to avoid liens by an exemption to which he would have been entitled at the time of filing his petition. *Id.* at 10. Thus the lien creditors in *Morgan* and *Schoonover* would be permitted to show that the debtor could not satisfy the "would have been exempt" language from § 522(f) at the time he filed his petition. *Id.* at 10. If the exemption claim is baseless, the debtor becomes entitled to such exemption under *Taylor* only later, upon the running of the objection period. But such an exemption is not one to which the debtor would have been entitled as of the date of the petition, as required for avoidance by § 522(f). This analysis achieves the *Morgan* and *Schoonover* result without suggesting that lienholders have greater due process rights or different deadlines than do general creditors. *Id.* at 10.

Bernreuter is therefore entitled to make a showing that Jarski is unable to satisfy § 522(f)'s requirement that the property "would have been exempt" at the time of the petition date, notwithstanding her failure to timely object to his exemption claim.

### Homestead Exemption

A.R.S. § 33–1101 provides in part:

A. Any person the age of eighteen or over, married or single, who resides within the state may hold as a homestead exempt from attachment, execution and forced sale, not exceeding one hundred thousand dollars in value, any one of the following: 1. The person's interest in real property in one compact body upon which exists a dwelling house in which the person resides.

■■■ Jarski owns and claims to reside in a home in Tempe, Arizona. Because a person can have several residences (but only one domicile) at any one point in time, even if Jarski also resided in a California home, he could still reside in Arizona and qualify for its homestead exemption. *See In re Tanzi*, 287 B.R. 557, 560–61 (Bankr. W.D.Wash.2002), *aff'd* 297 B.R. 607 (9th Cir. BAP 2003). Domicile, rather than residence, is contemplated by § 522(b)(2)(A), which provides:

(b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection. ... Such property is—

(2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180–day period than in any other place;

This section determines whose law governs the exemptions, but not whether the property claimed exempt must exist in that same state. *In re Tanzi*, 297 B.R. 607, 612 (9th Cir. BAP 2003). Therefore movant's homestead exemption would be governed by the applicable law in the state where he was domiciled for the greater portion of the 180 days prior to filing his bankruptcy petition. If it is determined that Jarski is domiciled in California, his homestead exemption in Arizona might still be allowed, but only if and to the extent California law would permit. *Id.* at 612–13.

■■■ Jarski filed for Chapter 7 relief on March 10, 2003. Jarski's Out–of–State Custody Decree is dated January 3, 2003. While the Court has not determined in this case whether the applicable law is California or Arizona, the Court finds that Jarski could make such a factual showing to be an Arizona domiciliary and resident for purposes of obtaining a valid Arizona homestead exemption as allowed by § 522(b)(2)(A) and A.R.S. § 33–1101, notwithstanding the fact that he claimed to be a California resident, but not domiciled there, as of January 2003. The Arizona homestead statute expressly contemplates that a debtor might have more than one residence that could qualify for the exemption because it creates a procedure for the debtor to choose which to claim as exempt. A.R.S. § 33–1102(A).

Consequently Bernreuter is not entitled to summary judgment based solely on the Out–of–State Custody decree and Jarski's claim of a California residence.

### Bankruptcy Code § 523(a)(5)

■■■ The Arizona superior court has authority under A.R.S. § 25–324 to award attorney's fees and costs in custody disputes, in which the relevant part provides:

The court from time to time, after considering the financial resources of both

parties and the reasonableness of the positions each party has taken throughout the proceedings, may order a party to pay a reasonable amount to the other party for the costs and expenses of maintaining or defending any proceeding under this chapter [Chapter 3, Dissolution of Marriage] or under chapter 4, article 1 of this Title [Child Custody].

The same statute was at issue and addressed by the Ninth Circuit in a Bankruptcy Act case, *Marks v. Catlow (In re Catlow)*, 663 F.2d 960 (9th Cir.1981). That court held that: "Arizona courts have ruled consistently that this statutory obligation is founded upon a spouse's duty of support to his or her spouse." *Id.* at 962. The court rejected the debtor's attempt to distinguish attorney's fees awarded to a former spouse in a post-divorce child custody proceeding: "Arizona law makes no distinction between fees awarded for legal services related to the actual dissolution of marriage and those related to child custody proceedings held subsequent to divorce." *Id.* at 963. Fees incurred in a child custody dispute are in the nature of support for the child, even if payable to someone else. 663 F.2d 960, 963; *In re Chang*, 163 F.3d 1138, 1141 (9th Cir.1998).

Under Arizona law the best interests of the child is the dispositive issue: "The court shall determine custody, either originally or upon petition for modification, in accordance with the best interests of the child." A.R.S. § 25–403(A). With Arizona's statutory requirement that custody disputes be resolved in the "best interests of the child," and that any award of attorney's fees must be based upon consideration of "the financial resources of both parties and the reasonableness of the positions each party has taken" in the child custody dispute, it would take a strong showing by the Debtor to demonstrate that an award of attorneys fees was intended to be, or in fact was, something other than in the nature of support for the child. Perhaps such a showing could be made if the fees were awarded purely as a sanction. No such showing has been made here. To the contrary, the excerpts of the record from the Superior Court all demonstrate that all of that court's rulings, including the award of attorney's fees, were made primarily with the best interests of the child in mind, and therefore the awards are in the nature of child support.

The judicial lien securing such child support debt is unavoidable pursuant to § 522(f)(1)(A)(i).

### Postpetition Lien

Bernreuter obtained her second judgment 30 days after Jarski's Chapter 7 filing. Actions taken in violation of the automatic stay are void. *In re Schwartz*, 954 F.2d 569, 571 (9th Cir.1992).

However, § 362(d) of the Code allows a bankruptcy court discretion to grant retroactive relief from the automatic stay upon request from an interested party and after notice and a hearing. *Id.* at 572. Bernreuter has made no such request for retroactive relief. While the second lien may be void, Bernreuter could seek another lien to the same effect, as this debt is nondischargeable because it is also in the nature of support for Jarski's children. To avoid unnecessary litigation to this end and because the Court has the discretion to annul the automatic stay under § 362(d), the Court hereby annuls the automatic stay, and the second lien is therefore also valid.

Alternatively, §§ 362(b)(2)(A) and 362(b)(2)(B) may save the second lien from voidance. They provide that a debtor's petition does not operate as a stay of "continuation of an action or proceeding for ... support," or "of the collection of alimony, maintenance, or support from

property that is not property of the estate." The appeal was a continuation of an action for custody or visitation rights and the fees awarded were in the nature of support. And although exempted property is property of the estate when the case is filed, upon allowance of the exemption it becomes "exempt from property of the estate" pursuant to § 522(b). Having found that Jarski is likely entitled to a homestead exemption of his Tempe property, the exempted property would no longer be part of the estate. Therefore Jarski's petition does not operate as a stay against Bernreuter's second lien, which the Court finds is the collection of support from Jarski's exempt property, and the second lien is valid.

Having found that the judicial liens are in the nature of support they are therefore nondischargeable and unavoidable. Bernreuter's motion for summary judgment is granted as to both nondischargeability of the debts and unavoidability of the liens. Jarski's motions to avoid the liens are denied.