
**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>MARK E. STUART,<br><br>　　　　　Debtor. | BAP No. AZ-20-1171-TBK<br><br>Bk. No. 2:19-bk-05481-BKM |
| MARK E. STUART,<br>　　　　　Appellant,<br>v.<br>CITY OF SCOTTSDALE,<br>　　　　　Appellee. | **MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the District of Arizona
Brenda K. Martin, Bankruptcy Judge, Presiding

Before: TAYLOR, BRAND, and KLEIN,[**] Bankruptcy Judges.

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[**] The Honorable Christopher M. Klein, U.S. Bankruptcy Judge for the Eastern District of California, sitting by designation.

# I. INTRODUCTION

Chapter 13[1] debtor Mark E. Stuart appeals pro se from the bankruptcy court's order overruling his objection to the City of Scottsdale's claim.[2] He argues that the judgment is unsecured and uncollectible and, thus, subject to disallowance under § 502(b). We disagree; this potentially uncollectible judgment is not an unenforceable claim within the meaning of that statute. He also raises a burden of proof argument, but the record reflects that the bankruptcy court correctly allocated the burden of proof in the claim objection context. We thus AFFIRM.

# II. FACTS[3]

Stuart, the City, and its officials have litigation history. Stuart unsuccessfully pursued two lawsuits in Maricopa County Superior Court against the City. And, as the City had given Stuart favorable offers of settlement that he refused, it obtained a judgment in each of these lawsuits for costs and damages pursuant to Ariz. R. Civ. P. 68. A 2015 judgment awarded the City $30,115.44, plus interest at the rate of 4.25 percent per annum until paid in full ("Judgment I"). Judgment I became final in 2018.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

[2] While the claim objection proceedings solely involved Stuart and the City, Stuart named several City officials as appellees. We grant appellees' request for dismissal of the City officials.

[3] We exercise our discretion to take judicial notice of documents electronically filed in the bankruptcy court, where appropriate. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

A 2018 judgment awarded the City $49,845.30, plus interest at the rate of 5.25 percent per annum until paid in full ("Judgment II" and collectively with Judgment I the "Judgments").

Stuart's appeal of Judgment II was pending when he filed his chapter 13 bankruptcy case. In bankruptcy schedule E/F, he listed the City as holding a disputed judgment claim of unknown amount. And he filed a chapter 13 plan which did not provide for the City's claim.

In response, the City filed a proof of claim asserting an $88,326.69 claim secured by a lien on Stuart's residence and objected to confirmation of the plan as failing to provide for its claim.

Stuart thereafter filed three amended chapter 13 plans; all generated an objection by the City because none of them provided for its claim.

In addition, Stuart objected to the City's claim, as relevant to this appeal, on three grounds. First, he argued that the City's claim was contingent on the outcome of his appeal of Judgment II. This objection became moot during this appeal; the Arizona appellate court affirmed. Second, he argued that the claim was not secured. And third, he argued that because the Judgments were against him individually—rather than jointly against him and his non-debtor spouse—Arizona law prohibited the City from enforcing its claim against his community property. To Stuart, this was a critical point. He alleged that his bankruptcy estate consisted solely of community property and requested that the claim be disallowed or amended to reflect that it is contingent, unsecured, and unenforceable.

3

The City opposed Stuart's claim objection. It disputed his characterization of its claim as uncollectible against community assets and subject to disallowance. In its view, what Stuart truly sought was not disallowance of its claim but a ruling precluding it from receiving plan distributions.

Eventually, the bankruptcy court sustained Stuart's objection to the City's secured status and otherwise overruled his objection to the City's claim. As to Stuart's objection that the claim was unenforceable against community property of the estate, the bankruptcy court determined that his argument impacted entitlement to plan distributions and not allowability of the City's claim.

Stuart timely appealed.

## III. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(B). We have jurisdiction over the appeal under 28 U.S.C. § 158.

## IV. ISSUE

Did the bankruptcy court err in overruling Stuart's claim objection?

## V. STANDARD OF REVIEW

"An order overruling a claim objection can raise legal issues (such as the proper construction of statutes and rules) which we review de novo[.]" *Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal)*, 450 B.R. 897, 918 (9th Cir. BAP 2011). "De novo review is independent, with no deference given to the trial court's conclusion." *Allen v. U.S. Bank, N.A. (In re Allen)*, 472 B.R. 559,

4

564 (9th Cir. BAP 2012).

## VI. DISCUSSION

Stuart asserts that the bankruptcy court erred in overruling in part his objection to the City's claim, arguing that: (1) the claim should be disallowed because the Judgments are uncollectable from the bankruptcy estate under Arizona law; (2) the bankruptcy court impermissibly shifted the burden of proof on the appropriate source of payment for the claim from the City to him when it deferred ruling on the issue until plan confirmation; and (3) the claim should be disallowed because it is not secured. We address his arguments in turn.[4]

### A. The enforceability of the City's claim under Arizona law

A duly executed proof of claim is prima facie evidence of the validity and amount of a claim. Rule 3001(f). Under § 502(a), the claim is "deemed allowed" in the absence of an objection. *See Heath v. Am. Express Travel Related Servs. Co. (In re Heath)*, 331 B.R. 424, 435 (9th Cir. BAP 2005). When an objection is filed, the burden switches to the objecting party to present evidence to overcome the prima facie case. *Cal. State Bd. of Equalization v. Off. Unsecured Creditors' Comm. (In re Fid. Holding Co., Ltd.)*, 837 F.2d 696, 698 (5th Cir. 1988). However, the ultimate burden of persuasion is on the claimant. *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991).

An objection may be filed on the basis that the claim falls into one of

---

[4] On appeal, Stuart does not challenge the bankruptcy court's denial of his objection to the City's claim as contingent on the outcome of his appeal of Judgment II.

the exceptions for allowance under § 502(b). *In re Heath*, 331 B.R. at 435.

In the bankruptcy court and on appeal, Stuart presented no evidence to dispute the amount or validity of the City's claim beyond reference to the now resolved Judgment II appeal. Instead, he argues the claim must be disallowed under § 502(b)(1) because: (1) Arizona law prohibits the City from collecting on its Judgments from his community property; and (2) the bankruptcy estate exclusively consists of community property. The City contests both allegations. But even assuming the City is wrong, Stuart does not dispute that the Judgments are against him personally and would be enforceable in full against his separate property. For this reason, his § 502(b)(1) objection fails.

Section 502(b)(1) provides that the bankruptcy court "shall allow" a claim "except to the extent that such claim is unenforceable against the debtor *and* property of the debtor, under . . . applicable law for a reason other than because such claim is contingent or unmatured[.]" § 502(b)(1) (emphasis added). As is the case here, when the language of a statute is plain, courts must enforce the statute according to its terms unless doing so would produce absurd results. *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004). Under a plain reading of § 502(b)(1), a bankruptcy court must allow a claim unless it is unenforceable against both the debtor *and* the debtor's property.

Thus, § 502(b)(1) contemplates circumstances in which an allowable "claim," like an *in rem* claim based on a mortgage that passes through a chapter 7 proceeding, consists of an obligation enforceable only against the

6

debtor's property. Likewise, as relevant herein, a creditor who has a claim that can be enforced against the debtor, but arguably not against the debtor's existing property, may also have an allowable claim—albeit a claim of limited utility in terms of entitlement to distributions from the estate. *See, e.g.*, *Merlino v. Weinstein (In re Merlino)*, 62 B.R. 836 (Bankr. W.D. Wash. 1986) (despite state community property laws providing that a claim based on a separate judgment against the debtor was enforceable only against the debtor's separate property, the debtor's present lack of such property did not operate to disallow the claim under § 502(b)(1)). In fact, not infrequently in chapter 7 cases, the appointed trustee will determine that there are insufficient estate funds from which distributions to creditors may be made. Similarly, in chapter 13 cases, some plans pay nothing to unsecured creditors. Yet, in such cases, filed claims are not disallowed under § 502(b)(1) on the basis that there is no property from which their claims may be satisfied.

Stuart resists this analysis. He urges us to instead interpret "unenforceable against the debtor" in § 502(b)(1) to mean presently uncollectable against the debtor. We decline to do so.

The word "uncollectable" does not appear in the Merriam-Webster definition for "unenforceable," which is defined as "unable to be enforced." *Unenforceable*, *Merriam-Webster Online Dictionary*, https://www.merriam-webster.com/dictionary/unenforceable (last visited Apr. 12, 2021). Neither does it appear in the Black's Law Dictionary definition for "unenforceable,"

which is defined as "(Of a contract) valid but incapable of being enforced." *Unenforceable*, *Black's Law Dictionary* (11th ed. 2019). Merriam-Webster in turn defines "enforce" to mean "constrain" or "compel." *Enforce*, *Merriam-Webster Online Dictionary*, https://www.merriam-webster.com/dictionary/enforce (last visited Apr. 12, 2021). Similarly, Black's Law Dictionary defines "enforce" to mean "to compel obedience to." *Enforce*, *Black's Law Dictionary* (11th ed. 2019). While Stuart's wife, her separate property, and the Stuarts' community property may not be constrained or compelled to satisfy the Judgments, Stuart and his separate property can be.

During the period of enforceability of an Arizona judgment under Ariz. Rev. Stat. Ann. § 12-1551(A) (2019) (West),[5] Stuart could be compelled to satisfy the Judgments from his separate property, and a temporary lack of assets subject to collection is merely a practical impediment to the Judgments' enforcement. The result is no different in a chapter 13 context. If the estate includes any of Stuart's separate property, such property is available for the satisfaction of the Judgments.

We note that adopting Stuart's interpretation of the words "unenforceable against the debtor" as meaning presently uncollectable could lead to untenable results that further justify its rejection.

---

[5] "The party in whose favor a judgment is given, at any time within ten years after entry of the judgment and within ten years after any renewal of the judgment either by affidavit or by an action brought on it, may have a writ of execution or other process issued for its enforcement." Ariz. Rev. Stat. Ann. § 12-1551(A) (2019) (West).

First, the exact character of estate assets, particularly over the multiple years of a chapter 13 case, is usually unclear at the time of a claim objection. The schedules may be inaccurate, or the estate may obtain assets in the future. Indeed, Stuart concedes this point; his fourth amended chapter 13 plan provides that any separate property he obtains during the life of the plan will be available for satisfaction of the City's debt. Given the uncertainty regarding the character of any chapter 13 estate's current and, in particular, future assets, it would be inappropriate to disallow claims based on a temporary lack of a source of payment.

And second, if the bankruptcy court entered an order disallowing the City's claim solely on the basis that there were presently no estate assets against which the Judgments may be enforced and later closed the case without granting Stuart a discharge, the order might confuse or complicate the City's enforcement of the Judgments outside of bankruptcy.

Accordingly, we conclude that the estate's alleged lack of assets available to pay the Judgments does not require disallowance of the City's claim.

## B. The bankruptcy court's allocation of the burden of proof

Stuart next argues that the bankruptcy court applied an improper burden of proof. We disagree. The bankruptcy court correctly identified and applied the burden of proof for claim objection proceedings and then determined that the City met its burden of proof to show that it had an allowable claim despite Stuart's objections.

Stuart argues the bankruptcy court implicitly reallocated the burden of proof from the City to him on the issue of the proper source of payment for the City's claim by deferring a ruling on the issue until plan confirmation. But there was no reallocation of the burden of proof. The bankruptcy court only determined that Stuart's argument that the City's claim was allegedly unpayable from estate assets was irrelevant to claim disallowance and overruled his objection on that basis.[6]

## C. The unsecured status of the City's claim

Stuart's final argument is that the bankruptcy court erred in overruling his claim objection because the City's claim is unsecured. It is not clear why he appeals on this basis. The bankruptcy court ruled in his favor on this issue, and the City did not file a cross-appeal. In any event, the bankruptcy court's determination that the claim is not secured by a lien on Stuart's residence does not necessitate claim disallowance. Stuart advances no argument equating the failure of security to the elimination of liability.

## D. The City's request for sanctions

The City argues that this appeal is frivolous and requests that the Panel enter sanctions against Stuart under Fed. R. App. P. 38 for filing the

---

[6] Stuart seems to be seeking an advisory opinion from us regarding the appropriate burden of proof on the issue of the proper source of payment for the City's claim in future litigation. But we are not in the business of giving advisory opinions on issues that are not yet ripe and may never ripen into a controversy. We lack jurisdiction to do so. *United States v. Gila Valley Irrigation Dist.*, 31 F.3d 1428, 1436 (9th Cir. 1994).

appeal. Sanctions for frivolous appeals are awarded only upon a separately filed motion or after notice from the Panel and a reasonable opportunity to respond. Rule 8020(a); *Tanzi v. Comerica Bank-Cal. (In re Tanzi)*, 297 B.R. 607, 613 (9th Cir. BAP 2003). We, therefore, decline to consider the request.

## VII. CONCLUSION

For the reasons set forth above, we AFFIRM the bankruptcy court's order overruling Stuart's claim objection.