96 P.3d 544

**In re the Marriage of Judith A. BIRT, Petitioner–Appellant,**

v.

**John Mark BIRT, Respondent–Appellee.**

**No. 1CA–CV 03–0258.**

Court of Appeals of Arizona, Division 1, Department B.

Aug. 12, 2004.

The Cavanagh Law Firm, P.A., by Helen R. Davis, Christopher Robbins, Phoenix, Attorneys for Petitioner–Appellant.

John Mark Birt, Phoenix, Respondent–Appellee In propria persona.

## OPINION

KESSLER, Judge.

¶ 1 Appellant Judith M. Birt ("Wife") appeals from the trial court's denial of her motion to set aside the decree of dissolution of her marriage to Appellee John Mark Birt ("Husband"). We hold that when a party to a dissolution action files a petition in bankruptcy shortly after entry of the decree to

avoid the decree's effect on allocation of community debts and such discharge may significantly affect the non-discharged spouse's qualification for spousal maintenance, child support and the equitable division of community property, the trial court should vacate those portions of the decree pursuant to Arizona Rule of Civil Procedure 60(c)(6) ("Rule 60(c)(6)") so it can provide relief to the non-discharged spouse. Based on the record presented here, the superior court erred when it denied Wife's motion. We reverse that order and remand for further proceedings consistent with this decision.

## FACTS AND RELEVANT PROCEEDINGS

¶ 2 The parties' marriage was dissolved by decree entered April 4, 2002. The trial court awarded Wife child support, but neither party sought spousal maintenance and no such maintenance was awarded. The trial court divided the parties' community property and obligations and ordered certain equalization payments and credits. The trial court confirmed the marital residence as Wife's sole and separate property, but ordered Wife to pay to Husband his share of the community's interest in the residence in the amount of $16,894. The trial court awarded Wife a timeshare valued at $1,000, but ordered her to pay Husband one-half of its value. The court also directed Wife to pay Husband $1,693 to compensate him for the difference in value of the vehicles awarded to each party. Wife's equalization payments owed to Husband totaled $19,087. The parties' retirement plans were to be divided pursuant to calculation of their respective interests, but the decree did not state the value of those assets. The trial court divided the parties' investment accounts equally but did not state the value of those assets.

¶ 3 The decree also made provision for the division of community liabilities. Debts incurred after October 1, 2000, were to be the sole and separate obligation of the party incurring that debt. The court ordered Wife and Husband to be equally responsible for a $50,000.00 debt to Patricia Pilgrim, Wife's mother. Husband was to be responsible for the debt payment to his parents because Wife had no knowledge of this debt and there was no written documentation memorializing the debt. All other debt incurred during marriage but not addressed in the decree was to be divided equally between the parties and each party was to be responsible for payment of one-half of such debt. The decree did not itemize these debts or describe their approximate total amount.

¶ 4 The trial court awarded Wife attorneys' fees from Husband in an amount later determined to be $20,107.04. Wife took the position that the award of attorneys' fees to her, plus approximately $1,000 for other items which were Husband's responsibility, more than offset the $19,087 Wife had been directed to pay to Husband as equalization payments.

¶ 5 Neither party appealed from the decree. On June 11, 2002, after the time for appeal from the decree had expired, Husband filed a Chapter 7 bankruptcy petition. Husband's schedules of debts to be discharged included $55,000 in debts incurred during the course of the marriage and listed Wife as the co-debtor. Included in those debts was the award of attorneys' fees to Wife of $20,107. The schedules also listed as dischargeable debts: (1) $50,000 to James and Janet Birt (listing Wife as a co-debtor); (2) $20,902 to Judith Birt as part of a dissolution settlement; (3) $50,000 to Pat Pilgrim (listing Wife as a co-debtor); and (4) $5,808 in legal fees to Bruce Brown, Husband's attorney in the dissolution action (listing Wife as a co-debtor).

¶ 6 Husband conceded below that he filed the bankruptcy petition because he thought the decree was erroneous and bankruptcy was the only means by which he could obtain relief from the financial aspects of the decree. Wife obtained an order for relief from the automatic stay of proceedings which Husband's bankruptcy filing had imposed to permit her to request that the superior court reopen and examine the equity of the property distributions, debt allocations and support provisions of the decree. However, the bankruptcy court denied Wife's request to lift the stay to have the state court determine what debts were discharged, and ordered Wife to seek such a determination in the

bankruptcy court. On October 1, 2002, four days after it lifted the stay, the bankruptcy court granted Husband's discharge.[1] That order does not list the debts which had been discharged. Rather, the order explains that debts "in the nature of alimony, maintenance, or support" are not discharged.

¶ 7 On October 4, 2002, Wife moved to set aside the decree of dissolution under Rules 60(c)(2), (5) and (6). She contended the effect of Husband's bankruptcy would require her to pay Husband for his share of the community assets, as ordered in the decree, but she: (1) Would not be entitled to recover the attorneys' fees awarded to her; and (2) Would be solely liable for all of the community's substantial debts, including those which had been equally divided by the dissolution decree. Wife sought to reopen the decree both for a reallocation of assets and liabilities and for an award of spousal maintenance to her. According to Wife, the discharge destroyed the equity intended by the decree.

¶ 8 The trial court denied Wife's motion without explanation. Wife filed a timely appeal from that order. We have jurisdiction pursuant to the Arizona Constitution, Article 6, Section 9, and Arizona Revised Statutes ("A.R.S.") section 12–2101(C) (2003).

## DISCUSSION

¶ 9 We review a trial court's denial of relief under Rule 60(c) for abuse of discretion. *City of Phoenix v. Geyler*, 144 Ariz. 323, 328–29, 697 P.2d 1073, 1078–79 (1985). Our deference on review is based upon the trial court's "more immediate grasp" of the facts and superior ability "to assess the impact" of what has occurred. *Id.* at 329, 697 P.2d at 1079. While we will not substitute our judgment for that of the trial court with respect to its discretionary decisions, where the "facts or inferences from them are not in dispute and where there are few or no conflicting procedural, factual or equitable con-

siderations, the resolution of the question is one of law or logic. Then it is our final responsibility to ... 'look over the shoulder' of the trial judge and, if appropriate, substitute our judgment for his or hers." *State v. Chapple*, 135 Ariz. 281, 297 n. 18, 660 P.2d 1208, 1224 n. 18 (1983).

¶ 10 On appeal, Wife contends the trial court erred in denying relief under Rule 60(c)(2), (5) and (6). Husband contends the underlying dissolution decree was inequitable, Wife has not suffered any harm by his bankruptcy and she is not entitled to relief under any of the above subsections of Rule 60(c). We consider each subsection of Rule 60(c) in turn.[2]

### Filing of Bankruptcy Petition Following Entry of Decree Does Not Constitute Newly Discovered Evidence.

¶ 11 Wife argues that Husband's bankruptcy filing constitutes newly discovered evidence under Rule 60(c)(2), which would have "significantly changed" the outcome of the dissolution decree. Newly discovered evidence within the meaning of Rule 60(c)(2) is evidence which existed at the time of trial. *Rogers v. Ogg*, 101 Ariz. 161, 163, 416 P.2d 594, 596 (1966), *overruled on other grounds*, *U.S. West Communications, Inc. v. Dep't of Revenue*, 199 Ariz. 101, 14 P.3d 292 (2000). Husband's bankruptcy filing after the date of the decree is not evidence which existed at the time the decree was issued. Accordingly, it does not constitute grounds for setting aside the dissolution decree under Rule 60(c)(2).

### Rule 60(c)(5) Is Inapplicable Because The Decree Had No Prospective Application.

¶ 12 Wife argues that the decree was subject to reopening under Rule 60(c)(5) because its prospective enforcement was no longer equitable. She acknowledges that the provisions of the decree whereby the parties

---

1. We may take judicial notice of the discharge. *In re Matter of Ronwin*, 139 Ariz. 576, 580 n. 4, 680 P.2d 107, 111 n. 4 (1983).

2. Rule 60(c) provides in pertinent part:
   On motion and upon such terms are just the court may relieve a party ... from a final judgment ... for the following reasons: ... (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial ... (5) ... it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

were to make payments to one another are not prospective, but contends that the provision whereby the parties were to share responsibility for the community debt obligations does have prospective application.

¶ 13 Wife cites *Edsall v. Superior Court*, 143 Ariz. 240, 693 P.2d 895 (1984) and *Lloyd v. Lloyd*, 23 Ariz.App. 376, 533 P.2d 684 (1975), *superseded by statute as found in Fye v. Zigoures*, 114 Ariz. 579, 581, 562 P.2d 1077, 1079 (App.1977), in support of reopening the decree under Rule 60(c)(5). Both cases are inapposite and we hold that the division of community liabilities between Husband and Wife is not prospective in nature for purposes of Rule 60(c)(5).

¶ 14 *Edsall* is not on point for a number of reasons, foremost among them that the Arizona Supreme Court's decision was clearly based on Rule 60(c)(6), not Rule 60(c)(5). 143 Ariz. at 243, 693 P.2d at 898. Moreover, the "extraordinary circumstances" in *Edsall* consisted of a retroactive change in the federal law governing the power of a state court to divide military retirement benefits upon dissolution. The change came by Congressional response to a decision of the United States Supreme Court that no community property rights existed in such benefits. *McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981). Effective in 1983 and retroactive to the date of the *McCarty* decision, Congress overruled *McCarty*, making military retirement benefits subject to state community property laws. *Edsall*, 143 Ariz. at 242–43, 693 P.2d at 896–97.

¶ 15 The Edsalls' decree of dissolution was entered between the time of the *McCarty* decision and its legislative overruling, and, under the *McCarty* rule, the court had determined that the non-military spouse was not entitled to any of the military spouse's retirement benefits. The Arizona Supreme Court found that Congressional intent to wipe out the effects of *McCarty* on persons who had been divorced in the interim period provided express authorization for setting aside such decrees and also constituted extraordinary circumstances justifying relief to redress an inequitable result in "the limited circumstances" presented. *Edsall*, 143 Ariz. at 243, 693 P.2d at 898. The *Edsall* court stated that Rules 60(c)(5) and (6) could be used in reopening final orders where there had been "a change in the law affecting substantial rights of a litigant." However, no such change in the law has occurred in this case. *Id.*

¶ 16 Nor does *Lloyd* support Wife's argument. There, this Court held that the portion of a dissolution decree which required husband to pay a lump sum to wife in installments was not prospective within the meaning of Rule 60(c)(5) because the decree constituted an absolute judgment which could not subsequently be modified. We see no analytic difference between a decree which requires future payments to a former spouse and one which requires future payments to a creditor. In both cases the obligation is fixed in a final judgment.[3]

¶ 17 Furthermore, Arizona law makes no conceptual distinction between the division of community assets and the division of community liabilities at dissolution. The authority of the court to allocate community liabilities between the parties is simply an aspect of its duty to effect an equitable division of all community property. *Lee v. Lee*, 133 Ariz. 118, 123–24, 649 P.2d 997, 1002–03 (App. 1982). As such, provisions as to debt are "final when entered, subject to the right of appeal" and the right to modification. A.R.S. §§ 25–325(A), –327.

¶ 18 Our holding that the division of community debts is not prospective for purposes of Rule 60(c)(5) is also supported by *Twelve John Does v. District of Columbia*, 841 F.2d 1133, 1138 (D.C.Cir.1988). There, the court examined the history of the "prospective application" doctrine and observed:

Virtually every court order causes at least some reverberations into the future, and

---

3. The *Fye* court explained that *Lloyd* was superseded by amendments to A.R.S. §§ 25–319(B), –327(B) (2000), authorizing a court to modify lump-sum spousal maintenance where the spouse to receive the maintenance had died.

114 Ariz. at 581, 562 P.2d at 1079. This does not take away from the holding in *Lloyd* that Rule 60(c)(5) was inapplicable to modify maintenance.

has, in that literal sense, some prospective effect; even a money judgment has continuing consequences, most obviously until it is satisfied, and thereafter as well inasmuch as everyone is constrained by his or her net worth. That a court's action has continuing consequences, however, does not necessarily mean that it has "prospective application . . . ."

*Id.* at 1138. The court then formulated the inquiry for prospective application as whether the judgment is "executory" or involves the "supervision of changing conduct or conditions." *Id.* at 1139.[4]

¶ 19 These standards mean in "practical terms" that judgments involving injunctions have prospective application while money judgments do not. *DeWeerth v. Baldinger,* 38 F.3d 1266, 1276 (2d Cir.1994). *DeWeerth* held that a judgment which determined title to property was not prospective but, rather, a declaration of present rights, and the fact that physical transfer of the property would be necessary to comport with the judgment did not make it executory. *Id.* at 1276. Even if the trial court had to be involved in enforcing an ordered transfer between the parties, that involvement would not constitute "supervision of changing conduct or conditions." *Id.*

¶ 20 We also find support for our analysis in the Restatement (Second) of Judgments § 73, cmt. b (1982):

If the controversy concerned a transaction that was complete when the judgment was rendered and the remedy was that of damages, the judgment is designed to close the matter. *So also if the controversy concerned ownership claims to specific property and the judgment determined the parties' interests in the property, a modi-*

*fication would amount to an improper redetermination of those interests.*

(Emphasis supplied).

¶ 21 The decree in this case was a final determination of the parties' rights and obligations stemming from the marital community, notwithstanding the allocation of responsibility for community obligations which required future payment. Even if the court issuing the decree had to become involved in enforcing its provisions between Wife and Husband, such involvement would not constitute the supervision of their changing conduct or conditions, merely the enforcement of vested rights. *DeWeerth,* 38 F.3d at 1276. We agree with *Twelve John Does* that a judgment's continuing consequences do not, alone, make a judgment prospective under Rule 60(c)(5).[5]

**The Trial Court Erred in Denying the Motion Under Rule 60(c)(6).**

¶ 22 Rule 60(c)(6) authorizes a court to vacate a judgment for "any other reason justifying relief from the operation of the judgment." It may be applied when relief is not available under any of the other subsections to the rule, *Edsall,* 143 Ariz. at 243, 693 P.2d at 898, and "when our systemic commitment to finality of judgments is outweighed by extraordinary circumstances of hardship or injustice." *Panzino v. City of Phoenix,* 196 Ariz. 442, 445, ¶ 6, 999 P.2d 198, 201 (2000) (citations and internal quotations omitted). When the burden to consider such relief has been met, the court should exercise its discretion so as to not deny relief where the result is harsh, rather than fair and equitable. *Ulibarri v. Gerstenberger,* 178 Ariz. 151, 164, 871 P.2d 698, 711 (App.1993).

¶ 23 Wife contends the trial court abused its discretion by refusing to grant her relief under this subsection because Hus-

---

4. The *Twelve John Does* court held that a judgment dismissing the Attorney General as a defendant in an action challenging the constitutionality of prison conditions was not one with prospective application within the meaning of subsection (5) because it definitively discharged him from the case and did not order him to perform, or not perform, any future act or require the court to supervise any continuing interaction between him and the other parties to the case. 841 F.2d at 1139.

5. As such, this case is unlike *Skousen v. W.C. Olsen Inv. Co.,* 149 Ariz. 251, 254, 717 P.2d 930, 933 (App.1986). There, the court affirmed the trial court's decision to grant Rule 60(c)(5) relief from a judgment enforcing a contract of indemnity when the anticipated loss had not yet occurred at the time of judgment and the indemnified transaction resulted in a substantial profit rather than a loss.

band's bankruptcy filing relieved him of the obligation to creditors under the decree, including certain obligations to Wife, and has created a "terrible disparity" which must be remedied. We hold the trial court erred in denying Wife relief under Rule 60(c)(6).

¶ 24 Our analysis begins with the effect of the dissolution decree and bankruptcy discharge on the parties' liabilities for community debts. In a marital dissolution proceeding, the power of the court to allocate responsibility for community obligations determines the parties' rights and obligations only with respect to each other and not to third-party creditors. *Community Guardian Bank v. Hamlin*, 182 Ariz. 627, 631, 898 P.2d 1005, 1009 (App.1995); *Lee*, 133 Ariz. at 123–24, 649 P.2d at 1002–03. *See also Gerow v. Covill*, 192 Ariz. 9, 13, ¶ 15, 960 P.2d 55, 59 (App.1998) (determination of spouses' rights to value of corporation was not a void conditional judgment because issue of husband's ownership interest in relation to third person would be determined separately); A.R.S. § 25–318(F)(Supp.2003) (requiring notice to petitioner and respondent that the decree is only binding as between them and does not affect the rights of creditors). Just as a decree of dissolution does not affect the rights of third parties, a discharge in bankruptcy of one unmarried debtor has no effect on the rights or obligations of other non-discharged debtors. 11 U.S.C. § 524(e) ("discharge does not affect the liability of any other entity on . . . such debt."). Thus, under the dissolution decree,

Wife remains liable on 100 percent of the parties' community debt. *Community Guardian Bank*, 182 Ariz. at 631, 898 P.2d at 1009. However, Husband's liability to the creditors on those debts was fully discharged in bankruptcy unless some or all of the debts were nondischargeable.

¶ 25 Husband's filing of bankruptcy, which he concedes was to avoid the terms of the dissolution decree, creates such a substantial injustice that it overrides the commitment to finality of judgments and on the facts of this case calls for relief under Rule 60(c)(6). The duty of the trial court was to make a fair and equitable division of assets and debts between the parties under the circumstances then existing. *Toth v. Toth*, 190 Ariz. 218, 221, 946 P.2d 900, 903 (1997). The court's equitable division of community debts was effectively and immediately destroyed when Husband's obligation to pay those debts was discharged in bankruptcy, leaving Wife liable for those debts.

¶ 26 The record reflects no legal reason for the denial of Rule 60(c)(6) relief as to those portions of the decree concerning spousal maintenance, property allocation and equalization payments. Given the effect of the bankruptcy on Wife's financial condition and the dissolution decree, there was nothing else the trial court could do to ensure that the equitable nature of the decree was restored and to determine whether Wife was entitled to maintenance.[6] A trial court can modify a

---

**6.** Because Wife did not request and the decree did not provide for maintenance given the parties' respective positions on property division and debts, Wife could not later successfully seek a modification to provide for maintenance under A.R.S. § 25–319 (Supp.2003). *See Long v. Long*, 39 Ariz. 271, 274, 5 P.2d 1047 (1931). *Cf. Neal v. Neal*, 116 Ariz. 590, 592–93, 570 P.2d 758, 760–61 (1977) (spouse must qualify for spousal maintenance at the time of dissolution).

Wife could have (and still can) seek relief under A.R.S. § 25–318(N) (Supp.2003). That statute provides:

If a party fails to comply with an order to pay debts, the court may enter orders transferring property of that spouse to compensate the other party. If the court finds that a party is in contempt as to an order to pay community debts, the court may impose appropriate sanctions under the law. A party must bring an action to enforce an order to pay a debt pursu-

ant to this subsection within two years after the date in which the debt should have been paid in full.

Subsection (N) provides a limited statutory remedy to a party where the other party fails to comply with an order to pay debts and authorizes a limited reopening of the decree to "transfer" property from the defaulting party in such cases. The trial court could not find Husband in contempt for failure to pay his portion of the allocated community debts without violating the bankruptcy discharge order under 11 U.S.C. § 524(a). *In re Ray*, 262 B.R. 580, 584–85 (Bankr.D.Me.2001). It is also unclear whether the court could declare Husband in default without violating the effect of the bankruptcy discharge. Even assuming that in some cases the trial court could reallocate community property under subsection (N) provided it did not circumvent the bankruptcy discharge, our understanding of the record is that any property to be

division of property in a dissolution decree by utilizing Rule 60(c)(6). While A.R.S. § 25–327(A) provides that a decree's provisions as to property disposition may not be revoked or modified unless the court "finds the existence of conditions that justify the reopening of a judgment under the laws of this state" that statutory requirement envisions relief under Rule 60(c). *Edsall,* 143 Ariz. at 243, 693 P.2d at 898; *Schmidt v. Schmidt,* 158 Ariz. 496, 498, 763 P.2d 992, 994 (App.1988).

¶ 27 We agree with those jurisdictions which have held that both Rule 60(c)(6) relief and modification of a decree are appropriate where a party files a bankruptcy petition to discharge debts allocated to that party under a divorce decree and the other spouse would then be liable for such debts under the decree. *Kopp v. Kopp,* 622 N.W.2d 726, 729 (N.D.2001) (finding that husband's bankruptcy created a "terrible disparity between the financial situation of the parties" by making wife solely liable for all community debts which warranted grant of relief under N.D.R.Civ.P. 60(b)(vi)); *Hopkins v. Hopkins,* 109 N.M. 233, 241, 784 P.2d 420, 428 (App. 1989) (holding trial court has equitable power under Rule 60 to accomplish justice, including power to award a support obligation where husband discharged debts in bankruptcy after decree was final); *In re Marriage of Beardslee,* 22 Kan.App.2d 787, 922 P.2d 1128, 1131–33 (1996) (holding court has authority under Kansas equivalent of Rule 60 to modify division of property after husband filed bankruptcy); *Foster v. Childers,* 416 N.W.2d 781, 785–86 (Minn.App.1987) (explaining Rule 60 was inapplicable because Minnesota law precluded any such relief once time to appeal had expired, court can consider discharge in bankruptcy as change in circumstances to permit modification of divorce decree); *Smith v. Smith,* 741 So.2d 420, 422–23 (Ala.Civ.App.1999) (holding spouse's bankruptcy discharge amounted to change in other spouse's financial condition was a change in circumstances sufficient to warrant an increase in alimony).

¶ 28 State and federal courts have held that a bankruptcy discharge of debts allocated in part to one of the parties to the divorce can constitute a change of circumstances to permit a modification of the property allocation, alimony and child support. Alyson F. Finkelstein, *A Tug of War: State Divorce Courts Versus Federal Bankruptcy Courts Regarding Debts Resulting from Divorce,* 18 BANKR.DEV.J. 169, 184–85 (2001) (citing cases) (hereafter, "Finkelstein"); Gavin L. Phillips, Annotation, *Divorce: Court's Authority to Institute or Increase Spousal Support Award after Discharge of Prior Property Award in Bankruptcy,* 87 A.L.R.4th 353, 361–63 §§ 5–6 (1991). *See, e.g., Hopkins v. Hopkins,* 487 A.2d 500, 504 (R.I.1985) (quoting *In re Dirks,* 15 B.R. 775, 780 (Bank. D.N.M.1981)) (where the initial dissolution decree did not provide for alimony after the discharge the divorce court could reevaluate the wife's express waiver of alimony by construing the allocation of debt as the equivalent of alimony and modify the decree to permit an award of alimony); *Kopp,* 622 N.W.2d at 727, 728–30, ¶¶ 6 and 11 (discharge of debt previously allocated to debtor spouse constituted change of circumstances to permit state court to modify decree and award alimony); *Marden v. Marden,* 546 N.W.2d 25, 27 (Minn.App.1996) (discharge amounted to change of circumstances to permit state court to modify child support); *Coakley v. Coakley,* 400 N.W.2d 436, 440–41 (Minn.App.1987) (discharge amounted to change of circumstances permitting state court to modify maintenance and child support awards); *In re Marriage of Beardslee,* 922 P.2d at 1131–33 (court could modify property allocation after bankruptcy discharge).

¶ 29 Consistent with this view, the Ninth Circuit held that when an ex-husband obtained a bankruptcy discharge of a property debt he owed his wife for the value of his medical practice pursuant to a prior divorce decree, the non-debtor spouse properly sought increased alimony from the divorce court based on a change of circumstances. *Siragusa v. Siragusa,* 27 F.3d 406, 408–09 (9th Cir.1994). The Ninth Circuit also held

reallocated is limited in value and would not protect Wife's rights.

that because nothing in the record suggested the divorce court was attempting to reinstate the discharged property debt, the amount of increased alimony was not a substitute for that debt. As the court stated, "[t]he alimony modification merely takes into account the fact that Ms. Siragusa would no longer receive the property settlement payments upon which the original alimony was premised. The discharge altered both Ms. Siragusa's need and Dr. Siragusa's ability to pay." *Id.*, 27 F.3d at 408. The court concluded that the modified alimony was not a violation of the bankruptcy discharge and the bankruptcy court properly deferred to the state court's determination that the change was not a reinstatement of the property settlement debt. *Id.* (citing *In re Harrell*, 754 F.2d 902, 907 (11th Cir.1985) (holding that bankruptcy court rulings should impinge on state domestic relations issues "in the most limited manner possible")). *Accord Kopp*, 622 N.W.2d at 728–30, ¶¶ 3 and 11–12 (affirming Rule 60 relief to award spousal maintenance); *Beckmann v. Beckmann*, 685 P.2d 1045, 1050–51 (Utah 1984) (affirming relief from decree and requiring discharged party to hold ex-spouse harmless from other debts because the sums at issue were for the maintenance and support of the ex-spouse and children).

¶ 30 Nor did Husband's bankruptcy discharge preclude the trial court from vacating the dissolution decree and redetermining the needs for maintenance or reallocating the division of property and equalization payments. A bankruptcy decree does not discharge debts "in the nature of alimony, maintenance, or support." 11 U.S.C. 523(a)(5); *Rosenberg v. Rosenberg*, 123 Ariz. 589, 592, 601 P.2d 589, 592 (1979); *Steiner v. Steiner*, 179 Ariz. 606, 612, 880 P.2d 1152, 1158 (App. 1994); *Jordan v. Jordan*, 166 Ariz. 408, 409, 803 P.2d 129, 130 (App.1990). Normally, when the bankruptcy court does not determine which debts are discharged, the state court has concurrent jurisdiction to make that determination. *Steiner*, 179 Ariz. at 611–12, 880 P.2d at 1157–58;[7] *Beckmann*, 685 P.2d at 1049–50.[8] Here, the trial court's authority was limited by the bankruptcy court's order lifting the bankruptcy stay. That order authorized Wife to seek to "reopen and examine the equity of the property distributions, debt allocations and support provisions" of the dissolution decree, but denied her request to "proceed with an action to determine the dischargeability [sic] of obligations [in state court and] bring such action to [sic] the United States Bankruptcy Court." Given this limitation and the circumstances

**7.** To preserve the authority of the state court to determine what debts were discharged or to make modifications in the dissolution decree, the non-debtor spouse should seek relief from the automatic bankruptcy stay imposed by 11 U.S.C. § 362. *See In re Marriage of Sprague*, 105 Cal. App.4th 215, 219, 129 Cal.Rptr.2d 261 (2003) (non-debtor spouse must seek relief from automatic stay to see determination of whether debt was discharged in state court); Hon. Louise De-Carl Adler and Jeanne Taber, *The Treatment of Divorce Debts in Bankruptcy After the Reform Act of 1994*, 23 CAL.BANKR.J. 149, 166 (1996) (while relief from automatic stay is not required to have state court determine nature of debts discharged after 1994 bankruptcy reform act, relief should be obtained to seek modification of divorce decree). *See In re Tostige*, 283 B.R. 462, 463–64 (Bankr.E.D.Mich.2002) (wife's attempt to reallocate terms of divorce decree without having bankruptcy stay lifted was an end-run around the bankruptcy discharge). Here, Wife's counsel obtained relief from the automatic stay to have the trial court consider relief from the dissolution decree's terms.

**8.** In making such a determination, regardless of how the property or debt allocation is labeled, a trial court has to determine the intent of both parties and the court underlying the decree, examining: (1) the language and substance of the agreement or decree in the context of surrounding circumstances, using extrinsic evidence is necessary; (2) the parties' financial circumstances at the time of the settlement or decree. "The facts that one spouse had custody of minor children, was not employed, or was employed in a less remunerative position than the other spouse are aspects of the parties' financial circumstances at the time the obligation was fixed which shed light on the inquiry into the nature of the obligation as support." *Steiner*, 179 Ariz. at 612, 880 P.2d at 1158; and (3) The function served by the obligation at the time of the divorce. "An obligation that serves to maintain daily necessities ... is indicative of a debt intended to be in the nature of support." *Id. Accord Foster*, 416 N.W.2d at 785–86 (discharge of debt to third-party creditor of community can be considered a change of circumstance to permit modification of decree); *Beckmann*, 685 P.2d at 1050 (same as to discharge of duty to indemnify wife on her share of community debt).

of this case, granting Wife Rule 60(c)(6) relief could not interfere with a determination of what debts were discharged or result in an "end-run" around the discharge. Ultimately, the bankruptcy court will determine what debts were discharged. The order lifting the stay permitted Wife to seek relief from the superior court, making clear that a Rule 60 motion would not violate the bankruptcy stay.

¶ 31 On remand, the superior court shall vacate those portions of the decree affecting spousal maintenance, property allocation and equalization payments and consider whether reallocating the community property and amending the equalization payments is appropriate in light of these changed circumstances. The court shall also consider a motion to amend Wife's original petition to allow her to seek spousal maintenance based on these circumstances.[9] The court shall also consider whether to modify child support in the event the parties' incomes change due to an award of maintenance.

¶ 32 In making such determinations, the superior court shall be guided by several principles. If the trial court reaffirms the prior award of attorneys' fees to Wife, it shall clarify whether such an award is based on Wife's financial circumstances and whether it was in the nature of maintenance or support rather than part of a property division. While Arizona law permits such an award based on the reasonableness of the parties' positions and the financial resources of the parties, A.R.S. § 25–324, the purpose is to provide a remedy for the party least able to pay. *In re Marriage of Zale*, 193 Ariz. 246, ¶ 20, 251, 972 P.2d 230, 235 (1999). Under prior bankruptcy statutes, the award would be deemed to be in the nature of maintenance or child support and thus nondischargeable based on state law. *Magee v. Magee*, 206 Ariz. 589, 592, ¶¶ 13–14, 81 P.3d

1048, 1051 (App.2004) (requiring payment of fees by one spouse on behalf of other is derived from and justified by the duty of support); *In re Matter of Catlow*, 663 F.2d 960, 962–63 (9th Cir.1981) (awarding attorney's fees in dissolution action was nondischargeable under prior bankruptcy code because the award fell into the same support category as spousal maintenance). However, a court must now apply federal law to determine if the award was nondischargeable based on whether it was premised on need or whether it was an equitable division of a debt. *In re Gibson*, 103 B.R. 218, 220–22 (B.A.P. 9th Cir.1989). In making that determination, the trial court on remand can consider the purpose of A.R.S. § 25–324, *In re Gibson*, 103 B.R. at 221, and shall clarify whether the award is made only as a sanction or is based on Wife's need. *Cf. In re Jarski*, 301 B.R. 342, 346–47 (Bankr.D.Ariz.2003) (holding fees incurred in child support dispute are in the nature of child support unless debtor spouse can make a strong showing that the fees were awarded "purely as a sanction"). This will assist the bankruptcy court in later determining whether the prior award was dischargeable.

¶ 33 The trial court shall consider whether the bankruptcy discharge, resulting in the doubling of Wife's ultimate liability on the community debts, requires an award of spousal maintenance to Wife. In making that decision, the trial court shall specify which debts it assumed were discharged and then determine whether the Wife's changed circumstances call for spousal maintenance and the amounts thereof.

¶ 34 We reject Husband's argument that Rule 60(c) relief is unnecessary because Wife has not shown that any creditors on the community debts divided between the parties have attempted to collect more than her share of those debts from her. That argu-

---

9. In so holding, we are not approving in general an amendment of a decree to award spousal maintenance when none was originally granted. *See Neal*, 116 Ariz. at 592–93, 570 P.2d at 760–61. Rather, we are allowing the decree to be vacated pursuant to Rule 60(c)(6) when a spouse has intentionally filed bankruptcy to avoid the

terms of the decree. We do not hold that the inevitable result is an award of spousal maintenance, but only that the court may now consider such an award in light of Husband's intentional, planned conduct aimed at avoiding the terms of the decree.

ment ignores that Wife's share of the community debt to third parties has now doubled because of the discharge of Husband's share of those debts. On remand, in determining whether there are changed circumstances, the court can consider whether the creditors on those putatively discharged debts have reached an agreement with Wife not to seek anything more than the half of those debts allocated to her in the earlier decree.

¶ 35 To the extent the trial court considers reallocating property, debts or equalization payments, it should clarify in its order whether the original allocations were in the nature of spousal maintenance or child support rather than a simple division of property and debt. As one commentator explained, divorce courts often allocate property or debts in such a way in lieu of alimony, thus blurring the difference between a true property division and spousal maintenance or support. *Finklestein* at 172–74. By making such a finding, the trial court will be able to assist the bankruptcy court in later determining whether any reallocation was in the nature of spousal maintenance or child support.

¶ 36 Unlike *Danielson v. Evans*, 201 Ariz. 401, 36 P.3d 749 (App.2001), our holding does not create an avenue for potential mischief by generally sanctioning reopening of decrees for subsequent changes in financial circumstances. In *Danielson*, the spouses were divorced in Colorado. Pursuant to the decree, the wife was to receive a portion of the ex-husband's retirement benefits which percentage was quantified in a dollar amount. Several years later, ex-husband began to receive disability payments, resulting in a reduction of his retirement benefits to the ex-wife. *Id.* at 403–06, ¶¶ 2–8 and 15, 36 P.3d at 751–54. The ex-wife then petitioned for an order to show cause why her ex-husband was not in contempt. The trial court granted her relief by requiring the ex-husband to pay additional amounts to her. *Id.* at 405–06, ¶¶ 10–12, 36 P.3d at 753–54. The court affirmed in part, noting that the relief was

consistent with the Colorado decree and did not clearly violate federal law. *Id.* at 406–11, ¶¶ 15–33, 36 P.3d at 754–59. The court rejected the ex-husband's request that the case be remanded to the trial court to equitably reallocate the community property based on the totality of current circumstances. The court reasoned that a reallocation would circumvent the policy of finality, conflicted with Rule 60(c) and was impractical because the parties had been divorced for eight years and any attempt to identify and reapportion their community property would be difficult if not impossible. *Id.* at 410, ¶ 32, 36 P.3d at 758.

¶ 37 In contrast, we have a change in circumstances within months of the decree caused by Husband's disappointment with the terms of the decree and his intentional attempt to seek relief from the decree through bankruptcy. Certainly, Husband has a right to seek relief in bankruptcy from dischargeable debts. However, when that action is taken shortly after a dissolution decree in an effort to circumvent that decree [10] and has this type of significant effect on the Wife's ability to support herself and meet her reasonable needs, Wife has a right to seek relief from the decree under Rule 60(c)(6). This will ensure that the equitable divisions and allocations made in the decree are not for naught. The trial court has the authority, in the proper case, to grant such relief without violating the Husband's bankruptcy discharge.

### Attorneys' Fees

¶ 38 Wife requests an award of attorneys' fees on appeal under A.R.S. § 25–324 (2000). This section authorizes an award of fees based upon either financial resources of both parties or the reasonableness of the positions each party has taken throughout the proceedings. The statute's purpose in authorizing an award based upon financial resources is to provide a remedy for the party least able to pay. *In re Marriage of Zale*, 193 Ariz. at 251, ¶ 20, 972 P.2d at 235. The trial court below determined that Wife

---

10. We do not imply or hold that a later bankruptcy by a party to a divorce requires or necessarily supports Rule 60(c)(6) relief. Each case must be determined on its own facts.

was entitled to an award of attorneys' fees. Husband has not pointed to any change in financial circumstances which would change the disparity in resources between the parties since that date. Indeed, the only change in circumstances based on the record before us is that Husband has been discharged from numerous debts and Wife has not. Accordingly, we determine in the exercise of our discretion that an award of fees on appeal is appropriate based solely on Wife's financial need. *See Magee,* 206 Ariz. at 593, ¶ 22, 81 P.3d at 1052 (award of attorneys' fees on appeal appropriate where arbitrator's decision below established financial disparity between parties and nothing which occurred on appeal changes that financial state of affairs). We will award Wife her reasonable attorneys' fees and costs upon her compliance with Rule 21, Arizona Rules of Civil Appellate Procedure.[11]

## CONCLUSION

¶ 39 The order of the trial court denying Wife's Rule 60(c) motion is reversed. We remand for further proceedings consistent with this decision.

CONCURRING: JEFFERSON L. LANKFORD, Presiding Judge and DANIEL A. BARKER, Judge.

---

11. Husband suggests that we should award him costs pursuant to A.R.S. § 12–2106 (2003), which provides for damages when an appeal is taken for delay or without sufficient grounds. We do not find that this appeal comes within the purview of § 12–2106 and therefore decline to award such damages.