232 P.3d 1249

**In re the Marriage of: David RAMSAY, Petitioner/Appellant,**

v.

**Victoria WHEELER–RAMSAY, Respondent/Appellee.**

**No. 1 CA–CV 09–0045.**

Court of Appeals of Arizona, Division 1, Department B.

May 20, 2010.

**470**

The Cavanagh Law Firm, P.A. By Christina S. Hamilton, Phoenix, Attorneys for Petitioner/Appellant.

James J. Syme, Jr., Attorney at Law By James J. Syme, Jr., Goodyear, Attorneys for Respondent/Appellee.

## OPINION

SWANN, Judge.

¶ 1 In this dissolution proceeding, David Ramsay ("Husband") appeals from the trial court's division of property and debt concerning real property located in Queen Creek, Arizona, and Rocky Point, Mexico, as well as the division of community credit card debt and bank accounts. In addition, Husband appeals from the trial court's award of spousal maintenance to Victoria Wheeler–Ramsay ("Wife").

¶ 2 We hold that real property acquired during the marriage does not necessarily lose its community character when one spouse encumbers the property without joinder of the other spouse. We further hold that a debt so incurred may be a community debt. Finally, we hold that the Maricopa County Spousal Maintenance Guidelines have no force of law, and cannot be used to attack an otherwise proper award of spousal maintenance. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶ 3 Husband and Wife married on July 18, 1998. On August 22, 2006, Husband filed a Petition for Dissolution of Marriage, and ef-

fected service of the petition on Wife on September 1, 2006. The decree of dissolution was filed more than two years later, on November 25, 2008.

¶ 4 During the marriage, Husband worked as a pilot for a Canadian airline, and as of July 1, 2008, Husband's year-to-date United States taxable income was $154,469.16—an average of $25,744.86 per month.[1] Wife received a bachelor's degree in engineering in Costa Rica. But because she does not have the American certifications necessary to work as an engineer in the United States, she could not perform engineering design work. Accordingly, Wife worked part-time for AZTEC Engineering, performing engineering calculations for design projects. For the first six months of 2008 she earned $21,-102.19—an average of $3,517.03 per month.

¶ 5 The trial court found that pursuant to A.R.S. § 25–319, Wife was entitled to spousal maintenance because "Wife will not have sufficient property to provide for her reasonable needs." To determine the amount and duration of the spousal maintenance, the court considered the factors enumerated in A.R.S. § 25–319(B). After considering these factors, the court awarded Wife spousal maintenance in the amount of $2,700 per month, beginning December 1, 2008, for a total of twenty-one months.

¶ 6 Before and during the course of the marriage, Husband and Wife acquired six different properties and were in the process of acquiring a seventh as the dissolution proceedings progressed. At issue in this appeal are properties located in Queen Creek, Arizona ("the 187th Way Property"), and in Puerto Peñasco, Mexico ("the Rocky Point Property").

¶ 7 With respect to the 187th Way Property, Husband and Wife executed an original Deed of Trust on July 20, 2005, as "wife and husband," securing a loan amount of

---

**1.** In his Opening Brief, Husband erroneously contends that his total taxable income as of July 1, 2008, was $124,381.81 Canadian dollars. For the pay period ending July 1, 2008, Husband's year-to-date taxable Canadian income was $142,111.63. At trial, Husband testified that the exchange rate was $0.92 Canadian dollar to $1 United States dollar. In his brief, Husband mis-

takenly applies this exchange rate in reverse, to arrive at an income smaller in United States dollars than in Canadian dollars. Correct application of the rate of exchange in evidence reveals that Husband earned the equivalent of $154,469.16 United States dollars from January 1, 2008, until July 1, 2008, or an average of $25,744.86 per month.

$343,450. On the same day, Husband and Wife executed a second Deed of Trust securing a loan amount of $64,350 as "wife and husband." On July 26, 2005, both parties signed a warranty deed, acknowledging that the property was titled as community property with right of survivorship. On February 6, 2006, Husband and Wife refinanced the second mortgage and received loan proceeds of $174,000. As a result, the existing second mortgage was fully paid off by the new loan and the parties received a $110,000 cash payout. The parties used the cash payout as follows: $36,128.56 was used to pay down debts on Husband's Ranier residence; $17,000 was used to pay community tax obligations for 2004 and 2005; $39,000 was used as part of the down payment for the Rocky Point Property; and $2,000 was paid to Husband.

¶ 8 On November 22, 2006, three months after Husband filed the Petition for Dissolution, Wife refinanced the 187th Way Property a second time, receiving loan proceeds of $528,000. Although the property was titled as community property, Wife purported to refinance the property as a married woman dealing with her sole and separate property.[2] This refinance, which was a negative amortization loan with a cap of $580,800, bundled the first and second mortgages into one mortgage.

¶ 9 In June 2007, Husband and Wife entered into an agreement to lease the 187th Way Property for $2,000 per month. Although the rent was to be paid to Wife, the lease agreement named both Husband and Wife as owners of the property and both signed the lease agreement as lessors.

¶ 10 The trial court found that the 187th Way Property was purchased jointly as an investment property, with a down payment of $21,529 obtained through the use of two community credit cards in Wife's name. With respect to the second refinance, the court found that Husband was aware of the refinancing, raised no objections to it, and did not sign a disclaimer deed. The court found that "the 187th Way Property remains owned by the community" and "that the existing obligations on the property should be borne jointly, although the mortgage technically obligates Wife solely." Accordingly, the court ordered the parties' joint tenancy ownership of the property to be converted to a tenancy in common with the filing of the decree. To this end, the court ordered the parties to take the necessary steps to add Husband as an equal obligor on the existing mortgage.

¶ 11 With respect to the Rocky Point Property, Husband and Wife signed a Promise of Trust Agreement to purchase a condominium for $390,000 on November 21, 2005. They paid a down payment of $117,000 in addition to a $6,000 fee for a golf membership. Of the $117,000 down payment, $39,000 was funded by monies taken from the first refinance of the 187th Way Property, and the remaining $78,000 was paid by Husband from his sole and separate property. Husband and Wife encountered problems with the transaction and did not close on the property. Accordingly, much of the down payment was forfeited.

¶ 12 The trial court found:

> To the extent this property (or property right) remains owned by the parties jointly at the time of the Decree, such ownership shall be converted to a tenancy in common by this Decree. Each party shall own an equal one-half interest in whatever property rights [are] held by the community at the time of this Decree. Furthermore, the parties shall be equally responsible for any debts or liabilities associated with this property at the time of the Decree, or that arise in the future.

¶ 13 In their joint pretrial statement, the parties agreed that at the time of the service of the Petition for Dissolution, the balances in their bank accounts totaled $47,592.01. At trial, Husband testified that after he filed the petition, Wife withdrew $13,150; accordingly, Husband contended that Wife was only enti-

---

**2.** Wife's signature alone appears on the Deed of Trust associated with this new loan. Husband neither signed the Deed of Trust nor signed a disclaimer deed disavowing his community interest in the property. Apparently, the lender over- looked the requirement in A.R.S. § 25–214(C)(1) (2007) that "any transaction for the acquisition, disposition or encumbrance of an interest in real property" must be joined by both spouses to bind the community.

tled to approximately $9,000 of the pre-petition account balance. Husband testified that after the date of service he also withdrew money from the joint checking account and that both parties deposited money into the joint account. The trial court concluded that each party was entitled to one-half of the balance of the accounts as of the date of service.

¶ 14 The parties also agreed in their joint pretrial statement that on the date of service of the petition, the debt owed on their credit card accounts totaled $31,340.17. No evidence was presented to indicate that the amounts owing on these credit accounts were separate property debt. Accordingly, the family court ordered that each party was responsible for one-half of the balance of the community credit card debt as of the date of service. To accomplish the payment of the indebtedness, the court ordered Husband to pay Wife an offset amount of $15,670 toward the credit card debt, and it ordered Wife solely responsible for the debt owing on each credit card while holding "Husband harmless therefrom."

¶ 15 Husband timely appeals the family court's decree. We have jurisdiction pursuant to A.R.S. § 12–2101(B) (2003).

## DISCUSSION

¶ 16 We review the family court's division of community property for abuse of discretion. *Boncoskey v. Boncoskey*, 216 Ariz. 448, 451, ¶ 13, 167 P.3d 705, 708 (App. 2007). We also review an award of spousal maintenance for abuse of discretion, viewing the evidence in the light most favorable to sustaining the award, and will affirm if there is any reasonable evidence to support the award. *Leathers v. Leathers*, 216 Ariz. 374, 376, ¶ 9, 166 P.3d 929, 931 (App.2007). There is an abuse of discretion if there is no evidence to support the family court's decision, *Little v. Little*, 193 Ariz. 518, 520, ¶ 5, 975 P.2d 108, 110 (1999), or if the court made an error of law. *Fuentes v. Fuentes*, 209 Ariz. 51, 56, ¶ 23, 97 P.3d 876, 881 (App.2004). We will not overturn a court's factual findings unless they are clearly erroneous, *Hrudka v. Hrudka*, 186 Ariz. 84, 92, 919 P.2d 179, 187 (App.1995), but the family court's character-

ization of property is a question of law that we review de novo. *In re Marriage of Pownall*, 197 Ariz. 577, 581, ¶ 15, 5 P.3d 911, 915 (App.2000).

## I. The 187th Way Property

¶ 17 Husband contends that the trial court was without jurisdiction to (1) hold Husband responsible for the mortgage obligation on the 187th Way Property, and (2) order Husband to take the necessary steps to add him as an equal obligor on the existing mortgage. Husband argues that the 187th Way Property was Wife's separate property because she entered into the second refinance agreement after he served the Petition for Dissolution. Accordingly, Husband argues the court was without authority to assign Wife's separate property debt or to consider it in a division of the community estate. We disagree.

### A. The 187th Way Property Was Community Property Before Husband Served the Petition for Dissolution.

¶ 18 " 'Property takes its character as separate or community at the time [of acquisition] and retains [that] character' throughout the marriage." *Bell–Kilbourn v. Bell–Kilbourn*, 216 Ariz. 521, 523, ¶ 5, 169 P.3d 111, 113 (App.2007) (alterations in original) (quoting *Honnas v. Honnas*, 133 Ariz. 39, 40, 648 P.2d 1045, 1046 (1982)). Property acquired during the marriage is presumed to be community, "and the spouse seeking to overcome the presumption has the burden of establishing a separate character of the property by clear and convincing evidence." *Thomas v. Thomas*, 142 Ariz. 386, 392, 690 P.2d 105, 111 (citing *Cockrill v. Cockrill*, 124 Ariz. 50, 601 P.2d 1334 (1979)).

¶ 19 The 187th Way Property was acquired during the parties' marriage for $343,450. The trial court found that when the parties purchased the property, they made a down payment in the amount of $21,529, which was obtained through the use of community credit cards. Absent any evidence in the record to the contrary, we must presume the trial court was correct in its finding that community funds were used to purchase the proper-

ty.[3] *See Kline v. Kline,* 221 Ariz. 564, 572, ¶ 33, 212 P.3d 902, 910 (App.2009) (reviewing court assumes the record supports the trial court's decision when no transcripts have been provided on appeal). Accordingly, we conclude that before service of the Petition for Dissolution, the 187th Way Property was community property.

### B. The Second Refinance Did Not Alter the Character of the 187th Way Property.

¶ 20 Property acquired during the course of marriage is community property, unless the property is "[a]cquired after service of a petition for dissolution of marriage . . . if the petition results in a decree of dissolution of marriage." A.R.S. § 25–211(A)(2) (Supp.2009).[4] Wife purported to treat the 187th Way Property as her sole and separate property when she used it as security for a loan, but that unilateral act did not effect a transmutation from community to separate character. *See* A.R.S. § 25–214(C)(1) (2007); *Bell–Kilbourn,* 216 Ariz. at 523, ¶ 7, 169 P.3d at 113 ("[S]pouses may convey separate and community property interests between them but only if done by a written instrument *accompanied by contemporaneous conduct indicating an intent to convey such interests.*" (emphasis added) (citation omitted)). Here, both the writing and conduct necessary to change the character of the property were lacking. Husband did not sign a disclaimer deed disavowing any interest in the property. Moreover, after Wife refinanced the 187th Way Property, the parties' conduct evidenced treatment of the residence as community property—the parties jointly entered into a lease agreement that listed both Husband and Wife as owners of the property. Accordingly, we conclude that the 187th Way Property was community property at the time of the decree, and therefore it was within the trial court's jurisdiction to divide the community equity and debt associated with the property. *See* A.R.S. § 25–318 (Supp.2009).

### C. The Community Remains Liable for the Debt on the 187th Way Property.

¶ 21 Husband argues that because Wife unilaterally secured a loan on the property after service of the Petition for Dissolution, neither he nor the community was bound to repay that loan. He therefore reasons that the family court lacked the authority to assign any part of the debt to him or order him to take steps to become an obligor on the loan.

¶ 22 Husband correctly notes that during the pendency of a petition for dissolution, joinder of both spouses is required to bind the community with respect to third parties. A.R.S. § 25–214(C)(3). In addition, both spouses must join in "[a]ny transaction for the acquisition, disposition or encumbrance of an interest in real property." A.R.S. § 25–214(C)(1). But our analysis does not end there, because this case concerns equitable division of community property and debt—not the collection of a debt by a creditor. When the property was refinanced for a second time, a new loan was created based on the value of the security. That security was a community asset. In addition, the proceeds of the refinancing were used to retire the earlier community debt secured by the property. When the transaction directly benefits the community, as it did here, there is a strong presumption that the debt acquired is community in nature. *Johnson v. Johnson,* 131 Ariz. 38, 45, 638 P.2d 705, 712 (1981).

¶ 23 We also find the logical underpinnings of Husband's position untenable. If Wife had assumed a sole and separate debt to satisfy the community's obligation, she would

3. Below and on appeal, Husband contends that he was never named on the mortgage for the 187th Way Property. This contention is not supported by the record. The documents in the record include the original Deed of Trust, the second Deed of Trust, the first refinance agreement, and the first lease agreement. Each names both Husband and Wife as borrowers, owners or signatories. Moreover, the warranty deed, signed by both Husband and Wife, acknowledges that the property was conveyed to them as community property with right of survivorship.

4. We cite to the current versions of statutes when no revisions material to our opinion have since occurred.

effectively have made a very large gift to the community (and to Husband) while a petition for dissolution was pending. There is no evidence to suggest that she intended to make such an improbable gift. Moreover, if we accepted Husband's argument that the loan altered the character of the property, we would effectively endorse a practice by which one spouse could unilaterally convert community assets to separate property merely by entering into a defective transaction with a third party. In a rising market, we doubt that any litigant would acquiesce so readily to the community's loss of property by such means. Though the position may seem expedient to Husband in this time of falling property values and negative equity, we do not reshape legal rules with each swing of the market.[5]

¶ 24 Husband counters that even if the *property* belongs to the community, the debt cannot be characterized as "community debt" because it is not enforceable against the community pursuant to A.R.S. § 25–214. Again, we disagree.

 ¶ 25 Though A.R.S. § 25–318 provides that the court may order the payment of community debts, the term "community debt" is not expressly defined by statute. In *Wine v. Wine,* the court held that the term "community debt" as used in a property settlement agreement "means generally all those obligations incurred during a marriage for the community or by virtue of the community property or income." 14 Ariz.App. 103, 105, 480 P.2d 1020, 1022 (1971) (citing *Wilson v. Wilson,* 33 Cal.2d 107, 199 P.2d 671 (1948)). We think this definition sound. First, it mirrors the definition of community property contained in A.R.S. § 25–211(A) (Supp.2009). Second, its reference to the term of the marriage and the purposes of the community (rather than the rights of third parties) serves to discourage the use of sham

transactions to defeat the rights of each spouse. Third, it is consistent with other provisions of Arizona law. Pursuant to A.R.S. § 25–318(A), "property acquired by either spouse outside this state shall be deemed to be community property if the property would have been community property if acquired in this state." If Husband's definition of "community debt" were the law, then an encumbrance on property acquired outside Arizona during a marriage would always be "separate debt" secured by community property. We cannot envision that the Legislature intended such a result. Finally, both spouses benefitted from the proceeds of the debt. It was used to discharge the earlier mortgages to which they were both parties. We therefore conclude that the new debt secured by the 187th Way Property was "community debt" subject to allocation by the court.[6]

 ¶ 26 "[T]he court has the power to order a return to the status quo or to treat a transaction invalid where an injunction has been violated." *Lonergan v. Strom,* 145 Ariz. 195, 200, 700 P.2d 893, 898 (App.1985) (citing *Kadrmas v. Kadrmas,* 264 N.W.2d 892, 894 (1978)). Here, there was a preliminary injunction in effect that prohibited the very transaction at issue. *See* A.R.S. § 25–315(A)(1) (Supp.2009). Although the trial court did not expressly invalidate the second refinance, it did order a return to the status quo by rejecting the property as Wife's sole and separate property and ordering that Husband be made liable once again for the loan as the law would have required in the first instance. Accordingly, we find no error in the trial court's order that the parties take steps to add Husband as an equal obligor on the existing mortgage.

## II. The Rocky Point Property

 ¶ 27 Husband contends that the trial court erred when it awarded each of the

---

5. Husband contends that because the property had negative equity at the time of trial, it was improper for the court to allocate the debt when he would have preferred to "walk away" from the property and the debt. We find no error. Despite the downward turn in the real estate market, the community received the benefit of its bargain when it received the loan proceeds. A court of equity does not err by failing to facilitate a breach of contract.

6. At oral argument, Husband's counsel asserted that the new loan did not serve a community purpose because the original loan that enabled the parties to purchase the property during the marriage was taken out in Wife's name only. This assertion is incorrect. Both parties were obligors on the original loan.

parties a one-half interest in any refund of the down payment on the Rocky Point Property. He argues that the trial court should have divided the refund in proportion to the amount contributed to the down payment because the parties never took title to the property.

¶ 28 In *Battiste v. Battiste*, the court held that "[w]here separate funds of one spouse have been used to purchase real property and title has been taken in joint tenancy, a presumption arises that a gift to the noncontributing spouse was intended." 135 Ariz. 470, 472, 662 P.2d 145, 147 (App. 1983) (citations omitted). When the presumption applies, the grantor has the burden of establishing by clear and convincing evidence that such a gift was not intended. *Id.* On the other hand, "[w]here a joint tenancy bank account of spouses is opened with separate funds, it retains its separate character unless clear and convincing evidence shows that a gift was intended." *Id.* at 473, 662 P.2d at 148 (citations omitted). "The funds in joint bank accounts belong to the parties in direct proportion to the sums contributed by each." *Id.* (citations omitted). Whether the down payment for the Rocky Point Property should have been allocated proportionally or equally turns on the question whether the failure to close the transaction renders the holding of *Battiste* inapplicable.

¶ 29 *Battiste* based its holding on the intent evident from the substance of the transaction itself. *See id.* at 472, 662 P.2d at 147 ("Thus, it would appear that from the face of the joint tenancy conveyance, a gift is intended to the noncontributing grantee. If such is not the grantor's intent, it must be established by clear and convincing evidence." (citation omitted)). Here, the record contains only evidence that the parties intended to hold title jointly. The Promise of Trust Agreement between the Ramsays and the seller of the property identifies the buyer of the property as the "Future Beneficiary," a term expressly defined as "David and Victoria Ramsay." Both Husband and Wife initialed each page of the agreement, and each

signed it. Nothing in the record suggests that the down payment was paid with any intent other than to hold the property jointly.

¶ 30 In addition, the parties actually paid the money toward the purchase of the property—they did not merely hold it in a joint account in anticipation of a future transaction. In our view, it was the act of parting with the money for a stated community goal that triggered the presumption of community character. The rights that the parties acquired with respect to the transaction were acquired jointly. We find nothing in the reasoning of *Battiste* or any other Arizona authority that would reverse the presumption of a gift to the community merely because the transaction failed to close.

### III. Joint Bank Accounts

¶ 31 Without citation to authority, Husband argues that the trial court erred when it ordered an equal division of the joint bank accounts without considering that Wife withdrew $13,150 from those accounts after service of the petition for dissolution. We disagree.

¶ 32 The parties agreed that, at the time of the service of the petition, the balances of their joint bank accounts totaled $47,592.01.[7] At trial, Husband testified that both he and Wife withdrew money from the joint accounts after the service of the petition, and that they also deposited money into the joint accounts. Husband further admitted that he was unable to fully trace all of the deposits and withdrawals to and from the joint accounts that had occurred after service of the petition. The full history of deposits and withdrawals remains unclear.

¶ 33 But it is not disputed that Wife withdrew $13,150 from the joint accounts after Husband served the petition. Nor is it disputed that Wife deposited at least $10,115 after she was served with the petition. A.R.S. § 25–318 requires a court to divide property and debt *equitably*, not to divide the property with arithmetic precision. *See Toth v. Toth*, 190 Ariz. 218, 222, 946 P.2d

7. There was no evidence presented at trial that any of the $47,592.01 in the joint accounts was ever the sole property of either spouse.

900, 904 (1997). "[D]istribution of marital property is left to the sound discretion of the trial court and will not be disturbed unless clearly erroneous." *Baum v. Baum,* 120 Ariz. 140, 142, 584 P.2d 604, 606 (App.1978) (citing *Nesmith v. Nesmith,* 112 Ariz. 248, 540 P.2d 1229 (1975); *Wick v. Wick,* 107 Ariz. 382, 489 P.2d 19 (1971)). Here, the parties' conceded inability to perform a precise accounting would make precision impossible even if it were required. Accordingly, we find no error.

## IV. Community Credit Cards

¶ 34 Husband also argues that the trial court was without jurisdiction to order him to pay Wife his share of the credit card obligation while simultaneously ordering Wife to pay the creditor directly. Husband acknowledges that A.R.S. § 25–318 permits the court to assign debt, but he argues that the court is without authority to order "one party to pay the other an equalizing payment or property payment, as a payment toward outstanding debt due to a third party."

¶ 35 As Husband correctly notes, A.R.S. § 25–318 requires the family court to assign the accrued community debt to each of the parties. Although the court is without authority to order a party to pay a non-party creditor for *disputed debts, Lee v. Lee,* 133 Ariz. 118, 123–24, 649 P.2d 997, 1002–03 (App.1982), the debts were not disputed in this case. Both parties agreed in the joint pretrial statement that the community was liable for credit card debt in the amount of $31,340.17. Pursuant to A.R.S. § 25–318, the trial court has the authority to divide the community liabilities between the parties to achieve an equitable division of all community property. *Lee,* 133 Ariz. at 123, 649 P.2d at 1002. In this instance, the court properly employed its inherent equitable authority to equalize the property division by ordering Husband to pay Wife a portion of the community debt that it ordered her to bear.[8]

## V. Spousal Maintenance

¶ 36 Husband argues that the trial court erred when it awarded Wife spousal maintenance of $2,700 per month for twenty-one months.[9]

¶ 37 To determine the amount and duration of spousal maintenance, the court is required to consider the thirteen factors enumerated in A.R.S. § 25–319(B). The decree of dissolution indicates the family court did consider those factors. "[B]ecause the trial judge is in the best position to properly tailor an award of spousal maintenance, the trial court is given broad discretion to determine what is a reasonable amount." *In re Marriage of Hinkston,* 133 Ariz. 592, 593, 653 P.2d 49, 50 (App.1982) (citations omitted). As of July 1, 2008, Husband earned an average of $25,744.86 per month in United States dollars. In contrast, Wife earned an average of $3,517.03 per month. On appeal, Husband contends that the "Maricopa County Guidelines" would require him to pay Wife only "12% of the differential between his gross income and her gross income." We reject this argument as a matter of law.

¶ 38 There are no legally authoritative "guidelines" governing spousal maintenance in Maricopa County or any other Arizona county.[10] A.R.S. § 25–319(B) vests the trial court with broad discretion to determine the amount and duration of spousal maintenance awards after due consideration of the factors that the Legislature articulated. The statute does not direct the court to refer to any set of guidelines, and the court's disregard of any such informal reference materials cannot give rise to a finding of abuse of discretion.

**8.** After entry of the decree, Husband sought bankruptcy protection. By allocating the responsibility for credit card debt through payment between the parties, rather than merely assigning responsibilities to third party creditors, the trial court may well have prevented the need for extraordinary post-decree proceedings. *See Birt v. Birt,* 208 Ariz. 546, 96 P.3d 544 (App.2004).

**9.** Pursuant to A.R.S. § 25–319(A), a court may order spousal maintenance only if it finds that one of the four statutory bases exists. Husband conceded at trial and on appeal that Wife was entitled to some award. We therefore limit our discussion to amount and duration of the award.

**10.** The guidelines represent an effort by some judges and practitioners in Maricopa County to "provide a starting point for discussion." They do not purport to be authoritative. *See Cullum v. Cullum,* 215 Ariz. 352, 355–56, 160 P.3d 231, 234–35 (App.2007).

*See Leathers v. Leathers,* 216 Ariz. 374, 377 n. 1, ¶ 10, 166 P.3d 929, 932 n. 1 (App.2007) (declining to consider guidelines because they consider only two factors, not the multi-factor test prescribed by statute); *cf. Cullum,* 215 Ariz. at 357, 160 P.3d at 236 (a maintenance award that is otherwise supported by the proper statutory analysis is not invalidated by trial court's reference to guidelines). In no case can a court commit error when it properly applies the statute, even where the guidelines suggest a different result. The court carefully considered the relevant factors, including the significant disparity between the parties' incomes and other resources, and we find no abuse of discretion in its award of $2,700 per month for twenty-one months.

## ATTORNEYS' FEES ON APPEAL

¶ 39 Both parties request an award of attorneys' fees pursuant to A.R.S. § 25–324 and ARCAP 21(c). In the exercise of our discretion, we award Wife attorneys' fees pending her compliance with ARCAP 21.

CONCURRING: PATRICIA K. NORRIS, Presiding Judge, and DANIEL A. BARKER, Judge.